## J. A. CATHCART and wife v. LIFE INSURANCE COMPANY OF VIRGINIA.

(Filed 22 May, 1907).

Insurance—Contract—Fraud—Waiver.—In an action upon a policy of life insurance alleged to have been induced by the false representations of the defendant's agent, the plaintiff by his conduct may waive the right to rely upon such representations. The plaintiff appearing to be an intelligent person, it was error in the court below to refuse to charge the jury upon defendant's request: "The plaintiff admits that at the time he received the policy he could have read it; that nothing was done by any agent of the company to keep him from reading it; that he put the policy away and several years thereafter he heard a general rumor that the company would not live up to the statements made by the agents; that he then read the policy, or such portions thereof as he saw proper; and the Court instructs the jury that, this being the evidence of the plaintiff himself, you will, on the whole evidence," find for the defendant.

CIVIL ACTION, tried before *W. R. Allen, J.,* and a jury, at January Term, 1907, of the Superior Court of MECKLEN-BURG County. From a judgment for plaintiffs defendant appealed. Pertinent facts stated in the opinion of the Court.

*Stewart & McRae* and *C. D. Bennett* for plaintiffs.
*W. B. Rodman, Winston & Bryant* and *Morrison & Whitlock* for defendant.

CLARK, C. J. The plaintiffs, husband and wife, allege that they were induced to take out these policies of insurance upon their own lives and the lives of their children, relying upon the representations of the agents of the companies that the policies should contain a provision that at the end of ten years the beneficiaries thereunder would be paid the face value of the policies, as in case of death, or the amount of premiums paid, with four per cent. interest. The defendant denied that any such representations were made.

The husband testified to the above representations, and that, four or five years after he had taken out the policies, hearing doubt as to this being the meaning of his policy, he got it, read part of it, and could have read it all, and continued to make payments five or six years longer, until it matured. He then demanded his money back, with interest, which the company refused to pay; and he brought this suit.

The *feme* plaintiff testified substantially to the same representations. All the agents named by the plaintiffs as having made these representations testified that they did not make them. The *feme* plaintiff testified that she read the policies, saw exactly what they said, and she paid the premiums after reading them; that one of the defendant's agents told her she would not get the face value of the policy if living at the end of ten years, but she thought he was joking. Another agent told her to read the policy, which she did, and re-read it.

The defendant asked the Court to charge the jury: "The plaintiff admits that at the time he received the policy he could have read it; that nothing was done by any agent of the company to keep him from reading it; that he put the policy away, and several years thereafter he heard a general talk among the people that the company would not live up to statements made by the agents, and that he then took his policy and read it, or read such part of it as he saw proper, and the Court instructs the jury that, this being the evidence of the plaintiff himself, you will, on the whole evidence, answer the sixteenth issue 'Yes.'" This issue was as to whether the plaintiff had waived the right to rely upon the alleged false representations, if made, and it was error to refuse the prayer, for the plaintiff testified that after reading the policy he continued to pay the premiums. This was an acquiescence in the terms and conditions of the policy. The *feme* plaintiff was even more explicit—that she read the policies again and

CATHCART *v.* INSURANCE CO.

again, and she and her husband thereafter continued to pay the premiums on all the policies which they had taken out for themselves and their children. The evidence is that the plaintiffs were intelligent persons.

This case is not like *Caldwell v. Insurance Co.,* 140 N. C., 100, for there the plaintiff was an illiterate old colored woman, who could not read the policy, but relied on the statement of the agent. Furthermore, when she became alarmed, the defendant's agent lulled her into security and induced her to continue to pay the premiums. There was nothing of that in this case; on the contrary, the agents told the plaintiffs to read their policies, which they were well able to do, and did.

Nor is this like *Gwaltney v. Insurance Co.,* 132 N. C., 925. There the policy was handed the insured by the general agent of the company, who had authority to waive any provision in the policy, and the application was for "a level-rate policy." The company issued a policy which increased the premiums with age. The insured was put off his guard by the agent handing him the policy on the street, with expressions which naturally led him to believe the policy conformed to the terms of his application. This was held to excuse the assured from any waiver of the fraud in not reading the policy. This case is rather like *Floars v. Insurance Co.,* at this term, where it was held that a failure to read the policy or examine it for three months is a waiver of any right to reform the policy on the ground of mistake.

Error.