### J. M. SIKES and wife v. LIFE INSURANCE COMPANY OF VIRGINIA.

(Filed 22 May, 1907).

**Insurance—Contract—Demurrer—Evidence—Waiver.**—In an action to recover premiums paid upon an accepted written policy of life insurance induced by the fraudulent oral representations of defendant's agent, the plaintiffs, nearly illiterate, do not waive their rights by such acceptance, or by payment of premiums, having read the policy without understanding it, and subsequent to its acceptance having been assured by the agent that the policy was such as he had represented it to be.

CIVIL ACTION, tried before *Ward, J.,* and a jury, at March Term, 1907, of the Superior Court of MECKLENBURG County. Upon the close of plaintiffs' evidence, his Honor directed a verdict as of nonsuit, and the plaintiff appealed. The pertinent facts are set out in the opinion of the Court.

*Stewart & McRae* and *C. D. Bennett* for plaintiffs.
*W. B. Rodman, Winston & Bryant* and *Morrison & Whitlock* for defendant.

CLARK, C. J. The plaintiffs, husband and wife, alleged that they took out the policies on their own lives and lives of their children on false representations of the agent, that at the end of ten years they would get back all they had paid in, with four per cent. interest. The plaintiff J. M. Sikes testified that the defendant's agent came to his house and asked him to take out insurance. He refused; but same agent came the second and third time and talked a good deal; that he, the plaintiff, signed no application; that the agent told him that if he died at the end of six months, if he kept up the policies, the plaintiff would get one-third; at the end of twelve months he would get the full face of the policies, that is, what it called for; the agent told him that it was a good thing, and the plaintiff here says immediately

after he told him that he got to studying about it; the agent told him that it was the same as a savings bank; that if he died the money would be paid and if he did not die he would get the money; that he would get the money either way, and at the end of ten years he would get the money back that he paid in, with interest at four per cent. The plaintiff says he asked him how he could do it; the agent answered that so many stayed in five, eight or nine years and then dropped out, and he further said that they had a surplus to pay to the ones that stayed in ten years, and the plaintiff says he took out the policy on that ground. He so told the plaintiff that two three different times; that all of these conversations were at his home; that there was no one present but his wife. The agent said that he would do the same thing with reference to his wife's policy; that if she kept it up ten years she would get what she paid in and interest on it, and also with reference to the policy on the life of his son.

Plaintiff says that his wife paid the premiums on these policies out of his money, perhaps some of it was her own. Plaintiff says that about five weeks after he took out the policies the same agent delivered it to him and at that time the agent said the policies were all right and the plaintiff would get the money he paid in, if he kept it up ten years, with four per cent. interest. He had never taken out any insurance before and did not have much education; never went to school much.

The plaintiff said he reckoned it was about thirty days before he looked over the policies; just looked at them to see; that he could not understand anything; that in consequence of what he saw he laid them down, and after that had a conversation with the agent about the policies and told him he could not understand it, and that the agent said there was exactly in the policies what he said there would be; and he asked the agent to read them to him, but he did not do it.

That was the same agent, Mr. Miller, and that he said that the superintendent instructed him to sell them that way. Mr. Miller was also the collector from the plaintiff, and he collected about two years.

Plaintiff carried the policies ten years. When the ten years were out plaintiff took his book and went to the office of the Life Insurance Company of Virginia and made his last payment and told them he wanted what was coming to him, and they said, "All right." This was the last pay day, and plaintiff asked them what he would get. Plaintiff did not get his money.

Plaintiff said that he never read all the policies; that he looked over part of them, and that he did not read that part beginning with "doth hereby agree." Plaintiff says that he could not pronounce the words in the policies; he could have read them, but could not pronounce them. Plaintiff says he was depending on getting his money back at the end of ten years, and that the agent was instructed by the superintendent to sell them that way, and that plaintiff knew nothing about how many people dropped out.

Mrs. Sikes said that the agent told them at the same time that the money would be saved; that it would be paying out a little each week and at the end of ten years, if the plaintiffs were living, that they would get it back, with four per cent. interest, and not lose anything. "We did not want to take them out at first. The agent was there a lot of times, a heap of times that Mr. Sikes was not there. This was the statement made at the time the policies were taken out. Mr. Miller was collector for two years or more. I never saw an insurance policy before; I was present when the policies were delivered. Mr. Miller delivered them himself. I did not read the policies because I relied simply on what the agent told me."

At the close of the plaintiff's evidence the Court directed a nonsuit. This was error. The testimony must be taken as true and in the most favorable aspect for the plaintiffs, with the most favorable inferences. So taken, the jury might well have found that a fraud had been perpetrated upon these plaintiffs. This case much resembles *Caldwell v. Insurance Co.,* 140 N. C., 100. The plaintiffs are nearly illiterate; they could not pronounce the words in the policies; they could not understand what they did read. The policies were taken back to the agent in thirty days, who said the policies were all right and at the end of ten years they would get back the amount paid in, with interest. The plaintiffs relied upon the statement and the renewed assurance of the agent. The plaintiffs' statement of the representations of the agent must also be taken as true. There was thus evidence of fraud, which, if believed by the jury, entitled the plaintiffs to recover their payments and interest (*Caldwell v. Insurance Co., supra*), and the case should have been submitted to the jury with such evidence in defense, if any, which the defendant might have offered. This case is not like *Cathcart v. Insurance Co.,* at this term. There the insured were intelligent; they read their policies; they were not lulled into security, as in this case and in *Caldwell v. Insurance Co., supra,* both when the policies were delivered and later when they asked for information of the agent and were told the policies were all right. In the *Cathcart case* the agent, when applied to, told them they would not get back the face of the policies with interest, and told them to read their policies. This they were well able to do, and after reading the policies they took the risk of the agent being wrong (joking, they said they thought) and continued to pay. In that case (*Cathcart's*) we held that the Court should have given the defendant's prayer, that if the jury believed the plaintiffs' evidence there was a waiver, for the

plaintiffs could read and did read their policies, and by continuing to pay the premiums after above replies of the agents and after reading their policies acquiesced in them, and waived any right to set up that they had been misled and deceived by the defendant's agents and that their ignorance had been imposed upon.

In the present case the plaintiffs tried to read, but could not understand. The apostle Philip's question to the Ethiopian, "Understandest thou what thou readest?" applies to others than him to whom it was addressed. The plaintiffs say they did not understand the policies, carried them back to the agent in thirty days, and were again assured they were according to the original representations and that at the end of ten years they would get their money back with interest. On this motion this must be taken as true, and a jury should have passed upon the evidence. The nonsuit it set aside and

Reversed.