W. B. CLEMENTS *v.* LIFE INSURANCE COMPANY OF VIRGINIA.

(Filed 26 April, 1911.)

1. Insurance — Policy — Written Contract — Presumption—Equity—
   Fraud—Evidence—Proof.

There is a presumption that a written contract of insurance expresses the intention of the parties, and a party who alleges mistake and seeks to reform the contract must overcome it and show mistake by clear, strong and convincing proof.

**2. Insurance — Policy — Written Contract — Fraud—Misrepresenta-
tions—Equity—Correction—Evidence.**

A mistake made by one party alone to a contract of insurance
will not afford a ground for rectification or correction thereof,
though equity will, in a proper case, afford relief by rescinding
the contract.

**3. Same.**

In an action upon a policy of life insurance, when it may fairly
be inferred from the evidence that the defendant issued and
caused to be delivered to the insured the very policy it was in-
tended he should have, and there is no sufficient evidence that it
made any mistake in its terms, there is no equitable ground for
reformation or correction.

**4. Equity—Relief—Diligence—Rule of Prudent Man.**

Equity will not afford relief to one who sleeps upon his rights,
or whose condition is traceable only to that want of diligence
which may fairly be expected from a reasonable and prudent
man ; and it requires of one asserting an equity, who was watch-
ful and discovered the wrong, that he be prompt in asserting his
rights.

**5. Same — Insurance—Policy—Written Contract—Fraud—Misrepre-
sentation—Correction—Cancellation.**

An insured who could read and write and who was afforded a
fair opportunity to understand his policy, put it in his trunk and
kept it there until it would suit his convenience to read it over.
After he had read the policy and discovered, or should have dis-
covered, that a provision which induced him to take the policy
was missing, he continued to pay the premiums, and brought this
action to reform or set aside the policy on the ground that the
agent of the company falsely represented that after he had paid
the premiums for a certain period he would, in addition to the in-
surance afforded, be repaid the full amount of the premiums and
interest thereon. *Held*, equity will afford no relief, as the conduct
of the insured amounted to an assent to the contract as written
and a full acquiescence therein, and any loss he may have suf-
fered was attributable to his own fault.

**6. Instructions — Fraud — Verdict — Appeal and Error—Evidence—
Nonsuit—Practice.**

When, under erroneous instructions of the trial judge upon an
issue of fraud raised in an action to set aside a policy of life in-
surance, the jury has found the issue against the defendant, and
there is no evidence of any fraud, viewing the case in its most
favorable light to the plaintiff, the error complained of vitiates
the entire verdict, and it will be set aside on appeal with direc-
tions to dismiss the action upon defendant's motion to nonsuit
made in apt time in the trial court.

APPEAL by defendant from *Daniels, J.,* at the January Term, 1911, of DURHAM.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*Branham & Brawley and Manning & Everett for plaintiff.*
*Bryant & Brogden for defendant.*

WALKER, J.   The plaintiff brought this action to recover the amount of premiums paid by him on two insurance policies, with interest.   He alleged that an agent of the defendant had represented to him that he was selling policies for the defendant, by the terms of which his life would be insured for ten years; that if he died before the expiration of the ten years, the beneficiaries would receive the amount of the policy, but if he lived to the end of the insurance period, he could withdraw the total amount of premiums paid to the company by him, with four per cent interest.   After some solicitation, he consented to take the policies, and they were sent to him.   He put them in his trunk without reading them, although he could read, and without making any effort to ascertain whether they conformed to the representation or agreement of the agent.   The plaintiff paid the premiums regularly, and continued to do so even after he had received information sufficient to put him on his guard and to notify him that no stipulation for the return of the premiums and interest was in the policy, which was the fact. There is a provision for the surrender of the policy at the end of the dividend period of ten years and the payment to him of the entire cash value, that is, his part of the legal reserve computed according to the tables of mortality and four per cent interest, together with the dividends, or for a settlement with the company upon the basis of either one of four other options, but none permitting a withdrawal of all premiums paid and interest.   The plaintiff appears from his own evidence, none having been introduced by the defendant, to be an intelligent man, fully capable of taking care of himself in any negotiation between him and the defendant's agent, who dealt with him, for the purchase of the policies.   There is absolutely no evidence tending to show that the agent attempted to take any advantage

of him, except in making the false representation or promise, or that he resorted to any trick, device or artifice to prevent his reading the policies, or that he misread them to him or made any false statement about their contents when the policies were delivered. They were left with him at his home by the agent, without a word being said as to their contents. It is true the plaintiff testifies that he was not a good reader, and was not able to make out some words of the policies when he took them from his trunk and attempted to read them afterwards, but he could not say what words they were, and he also stated that he could easily have had them read to him, though he did not ask any one to do so. The defendant, at the close of the evidence, moved to nonsuit the plaintiff. The motion should have been allowed and the refusal of the court to grant it was error.

The defendant's agent may have made a false promise to the plaintiff, but there is no more than this in the case. There is no element of fraud in the transaction and no case made out for either a rescission or reformation of the contract. "The rule that all prior parol agreements are merged in a subsequent written contract touching the same subject-matter, is now too well established to need the support of cited authority. Therefore, when a policy of insurance, properly executed, is offered by the insurer and accepted by the insured as the evidence of their contract, it must be conclusively presumed to contain all the terms of the agreement for insurance by which the parties intend to be bound. If any previous agreement of the parties shall be omitted from the policy, or any terms not theretofore considered added to it, the parties are necessarily presumed to have adopted the contract as written as the final form of their binding agreement." Vance on Insurance, p. 348.

In *Insurance Co. v. Mowry,* 96 U. S., 547, the rule is thus strongly expressed by *Justice Field:* "The entire engagement of the parties, with all the conditions upon which its fulfilment could be obtained, must be conclusively presumed to be there stated. If, by inadvertence or mistake, provisions were omitted the parties could have had recourse, for a correction of the agreement, to a court of equity, which is competent to give all needful relief in such cases. But until thus corrected the policy

CLEMENTS *v.* INSURANCE CO.

must be taken as expressing the final understanding of the assured and of the insurance company." There is always a strong presumption in favor of the correctness of the instrument as written and executed, for it must be assumed that the parties knew what they had agreed and have chosen fit and proper words to express that agreement in its entirety. In order to overcome this fair presumption, the one who alleges that there is a mistake therein and seeks to reform the contract, is required to make out his case by clear, strong and convincing proof, and until this is done, the contract must stand and be enforced as it is written. *Warehouse Co. v. Ozment,* 132 N. C., 839. There is another principle to be considered. If reformation be sought solely on the ground of mistake, it must appear that the mistake was material and common to both parties. A court cannot make for the parties a contract which they did not make and did not intend to make for themselves. A mistake by one party may sometimes be ground for rescission, but not for rectification or correction. Kerr on Insurance, sec. 72, p. 146; *Floars v. Insurance Co.,* 144 N. C., 232. There is no evidence in this case of any mutual mistake. On the contrary, it is to be fairly inferred from the evidence that the defendant issued and caused to be delivered to the plaintiff the very policy it intended he should have, and there is no sufficient proof, not meaning to pass upon the quantum or weight of the evidence, that *it* has made any mistake at all. The facts in this case are similar to those in *Cathcart v. Insurance Co.,* 144 N. C., 623, and our decision must be the same as in that case. We there held that no case had been shown, either for cancellation or reformation of the contract. *Frazell v. Insurance Co.,* 153 N. C., 60. The loss of the plaintiff, if any he has sustained, is directly and wholly attributable to gross neglect of his own interests and to his supineness when he should have been active and vigilant. Equity will not assist one whose condition is traceable only to that want of diligence which may fairly be expected from a reasonable and prudent person, and even when he is watchful and discovers a wrong practiced upon him, a court of equity requires that he should be prompt in asserting his claim to relief against it, for it will not aid those who sleep on their

rights, but only those who are vigilant. *Upton v. Tribilcock,* 91 U. S., at p. 45. In that case it is said: "That the defendant did not read the charter and by-laws, if such were the fact, was his own fault. It will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they were written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission. *Jackson v. Croy,* 12 Johns., 427; *Leis v. Stubbs,* 6 Watts., 48; *Farly v. Bryant,* 32 Me., 474; *Coffing v. Taylor,* 16 Ill., 457; *Slafyton v. Scott,* 13 Ves., 427; *Alvanly v. Kinnaid,* 2 Mac. & G., 7; 29 Beav., 490."

Applying the foregoing principles to the facts, we find that the plaintiff could easily have ascertained by reading the policies whether the sixth option, upon which he says he relied, had been inserted therein, but instead of doing this, which was his plain duty under the circumstances, he carelessly and without the least regard for his own rights or the protection of his interests, deposited them in his trunk until it suited his convenience to read them, and even after he read them and discovered, or should have discovered, that the provision was missing, he continued to pay the premiums. This was a clear assent on his part to the contract as written, and a full acquiescence in its terms. If he has suffered any loss by reason of the fact that the option was not inserted in the policies, it is all his own fault and he must bear the consequences of his own neglect. In *Floars v. Insurance Co.,* 144 N. C., at p. 240, it is said: "There is also strong authority for the position that on the facts of this case the relief sought would not be open to plaintiff even if there had been a mutual mistake in the preliminary bargain, and by persons with full power to contract, for the reason that plaintiff accepted the policy with the alleged stipulation omitted without having read same, and held it without a protest for three months," citing *Upton v. Tribilcock, supra.* This case bears no resemblance to *Caldwell v. Insurance Co.,* 140 N. C., 100; *Sikes v. Insurance Co.,* 144 N. C., 626; *Sikes v.*

*Insurance Co.,* 148 N. C., 13; *Austin v. Insurance Co.,* 148 N. C., 24; *Whitehurst v. Insurance Co.,* 149 N. C., 273; *Jones v. Insurance Co.,* 151 N. C., 54; for in those cases it appeared that the agents dealt with illiterate persons of inferior intelligence, and took advantage of the fact by misreading and falsely explaining the policies, by reason of which fraud the plaintiffs were induced to sign contracts they had not made.

The jury have found, under erroneous instructions as to the law, that the plaintiff was defrauded by the defendant's agent. There was no evidence of any fraud, viewing the case in the most favorable light for the plaintiff. The error of the court vitiates the entire verdict, and it must be set aside, with directions to dismiss the action upon the defendant's motion to nonsuit.

Action dismissed.