ANTHONY G. WILLIS, Executor of the Estate of Janice D. Willis, Beneficiary and
Trustee of the Janice D. Willis Revocable Trust Dated the 25th of September,
2009, and Individually, and the Janice D. Willis Revocable Trust Dated the 25th
of September, 2009, Plaintiff v. ROBERT WILLIS, ROBIN WILLIS, and THE
ESTATE OF EDWARD CARROLL WILLIS, Defendants

No. COA10-1338

(Filed 20 September 2011)

**Deeds—reformation—original intent—no unilateral mistake**

The trial court did not err in a deed reformation case by
granting defendants' motion for directed verdict at the close of
all evidence. The facts did not negate the validity of the original
understanding of the parties at the time that the property was
devised, but instead showed only that the deviser had not
expected her son's untimely death and never anticipated that his
children would be entitled to inherit the property. There was not
a scintilla of evidence that a unilateral mistake occurred.

Appeal by Plaintiff from order entered 28 May 2010, *nunc pro
tunc* 29 April 2010 by Judge W. Allen Cobb, Jr. in Carteret County
Superior Court. Heard in the Court of Appeals 23 March 2011.

*Harvell and Collins, P.A., by Wesley A. Collins and Russell C.
Alexander, for Plaintiff-Appellant.*

*Beswick & Goines, PLLC, by Erin B. Meeks and George W.
Beswick, for Defendant-Appellees.*

BEASLEY, Judge.

1

**WILLIS v. WILLIS**

[216 N.C. App. 1 (2011)]

Anthony G. Willis (Anthony), executor of the Estate of Janice D. Willis (Ms. Willis), beneficiary and trustee of the Janice D. Willis Revocable Trust, and individually, and the Janice D. Willis Revocable Trust (collectively Plaintiff) appeal the trial court's order granting a directed verdict to Robert Willis (Robert), Robin Willis (Robin), and the Estate of Edward Carroll Willis (Eddie) (collectively Defendants). After careful review, we affirm the trial court's order.

*I. Background*

In December 2004, Ms. Willis procured the services of attorney John Way (Mr. Way) to draft her will. At that time, Ms. Willis' husband was deceased and she had two adult sons, Eddie and Anthony. The will signed by Ms. Willis included the following provision regarding Ms. Willis' "home place":

> I bequeath and devise any interest that I may own in my home place to my son, Edward Carroll Willis. If I decide to convey my home place in Beaufort, North Carolina to Edward Carroll Willis before my death, and, if he decides to sell said home, then it is my wish that he divide the proceeds after expenses with his brother, Anthony Grady Willis.

Ms. Willis bequeathed the residue of her estate to Eddie and Anthony in equal shares. The will further provided that if one or both of her sons predeceased her, then the residue of her estate would pass to the deceased son's "living issues per stirpes."

Ms. Willis continued to conduct meetings with Mr. Way and consulted with him about her legal options for transferring an interest in her home to Eddie immediately, rather than upon her death. It is undisputed that Ms. Willis expressed a desire to provide a place for Eddie, who was currently living with Ms. Willis in her home, to live for the remainder of his life. As a result of these meetings, Mr. Way drafted a general warranty deed (Deed) in which Ms. Willis reserved a life estate in her home and transferred the remainder interest to Eddie in fee simple. The Deed did not devise any interest in the home to Anthony or contemplate a reversionary interest of any kind. Ms. Willis executed the Deed on 4 January 2005. The Deed stated it was "for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged." However, the Deed was filed without revenue stamps and no money changed hands between Ms. Willis and Eddie.

In November 2007, Eddie died intestate. Shortly thereafter, Ms. Willis received a copy of the Deed and realized that Eddie's interest

**WILLIS v. WILLIS**

[216 N.C. App. 1 (2011)]

in her property would pass to his two children, Robin and Robert. It is undisputed that Ms. Willis expressed displeasure regarding the legal ramifications of the Deed she executed.

In February 2008, Ms. Willis initiated an action in Carteret County Superior Court to reform the Deed on the basis of a unilateral mistake. Ms. Willis asserted in the complaint that she "thought that the [D]eed only gave . . . [Eddie] the right to live in her home the rest of his life." Beginning on 26 April 2010, the case was tried by a jury. After all of the evidence was presented, Defendants moved for a directed verdict, which was granted by the trial court. Ms. Willis appealed.[1]

## II. Discussion

Plaintiff argues that the trial court erred by directing a verdict for Defendants at the close of all the evidence. We disagree.

### A. Standard of Review

"The standard of review for a motion for directed verdict is whether the evidence, considered in the light most favorable to the non-moving party, is sufficient to be submitted to the jury. A motion for directed verdict should be denied if more than a scintilla of evidence supports each element of the non-moving party's claim. This Court reviews a trial court's grant of a motion for directed verdict *de novo*."

*Weeks v. Select Homes, Inc.*, 193 N.C. App. 725, 730, ___ S.E.2d ___, ___ (2008) (quoting *Herring v. Food Lion, LLC*, 175 N.C. App. 22, 26, 623 S.E.2d 281, 284 (2005)). "Where the question of granting a directed verdict is a close one, the better practice is for the trial judge to reserve his decision on the motion and submit the case to the jury." *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923 (1998).

### B. Reformation of the Deed

Generally, "[i]n an action for reformation of a written instrument, the plaintiff has the burden of showing that the terms of the instrument do not represent the original understanding of the parties and must do so by clear, cogent and convincing evidence." *Hice v. Hi-Mil, Inc.*, 301 N.C. 647, 651, 273 S.E.2d 268, 270 (1981). "Additionally, there is 'a strong presumption in favor of the correctness of the instrument as written and executed, for it must be assumed that the parties knew what they agreed and have chosen fit and proper words to express

---

1. After notice of appeal was entered, Ms. Willis died. By consent of the parties, her estate was substituted as Plaintiff for purposes of this appeal.

that agreement in its entirety.' " *Id.* (quoting *Clements v. Insurance Co.*, 155 N.C. 57, 61, 70 S.E. 1076, 1077 (1911)).

In the instant case, Plaintiff sought the reformation of the Deed on the basis of a unilateral mistake. Plaintiff relies on *Nelson v. Harris*, 32 N.C. App. 375, 232 S.E.2d 298 (1977), for the proposition that unilateral mistake by one party, when not induced by the fraud or inequitable conduct of the other, may still support the reformation of a deed conveying property as a gift. Specifically, "[t]he grantor of a conveyance for which no consideration was given by the grantee is entitled to reformation when the deed fails to express the actual intent of the parties due to the grantor's unilateral mistake." *Nelson*, 32 N.C. App. at 379, 232 S.E.2d at 300 (citing 66 Am. Jur., *Reformation of Instruments*, § 45 (1973); Annot. 69 A.L.R. 423, 430-31 (1930)). Thus, in order for this case to proceed to the jury, Ms. Willis had to produce more than a scintilla of evidence that the Deed was not supported by consideration *and* that the Deed failed to express her actual intent in executing the Deed due to her unilateral mistake. Assuming, *arguendo*, that there was sufficient evidence to establish that the Deed was executed without consideration, we hold that there was not sufficient evidence to establish that a unilateral mistake occurred on the part of Ms. Willis.

There is abundant testimony in the record that Ms. Willis intended to provide a place for Eddie to live for the rest of his life; however, there was not a scintilla of evidence to establish that Ms. Willis intended to merely give Eddie a life estate as she now contends. In fact, the evidence presented to the jury tended to establish that Ms. Willis fully understood that the Deed conveyed fee simple title to Eddie and a life estate to Ms. Willis. Mr. Way testified that he and Ms. Willis discussed tax consequences and Ms. Willis' eligibility for Medicare as she contemplated the best devisal to Eddie.[2] The discussion in reference to the impact of the conveyance to Eddie on Ms. Willis' eligibility for Medicare tended to show that Ms. Willis fully understood the effect of a conveyance by life estate and by fee simple. As demonstrated by her own deposition and Mr. Way's testimony, Ms. Willis thoroughly considered her options and Mr. Way complied with Ms. Willis' requests. Moreover, it is not enough for Plaintiff to assert that Ms. Willis did not read the Deed and that she assumed that

---

2. Mr. Way may have given Ms. Willis improper advice about how a conveyance to Eddie might affect Ms. Willis' qualifications for Medicare, and Ms. Willis may have relied on this advice. However, Plaintiff does not raise this issue and Mr. Way's advice, even if incorrect, did not alter Ms. Willis' general intent.

Mr. Way drafted the Deed pursuant to her wishes—to give Eddie a life estate. *See Rourk v. Brunswick County*, 46 N.C. App. 795, 797, 266 S.E.2d 401, 403 (1980) ("It must be assumed the plaintiff[] signed the instrument [she] intended to sign.").

Additionally, the evidence established that Ms. Willis "had no idea that Eddie was going" to die before her and that she was angry when she discovered the legal effect of the Deed after Eddie's death. These facts do not negate the validity of the original understanding of the parties at the time that the property was devised but, rather, show only that Ms. Willis simply had not expected Eddie's untimely death and never anticipated that his children would be entitled to inherit the property. As discussed, a party's "mistake[] as to the legal consequences of the deed . . . will not support reformation." *Mims v. Mims*, 48 N.C. App. 216, 218, 268 S.E.2d 544, 546 (1980), *rev'd on other grounds*, 305 N.C. 41, 286 S.E.2d 779 (1982).

Our Courts have often acknowledged that "mere ignorance of law, unless there be some fraud or circumvention, is not a ground for relief in equity whereby to *set aside* conveyances or avoid the legal effect of acts which have been done." *Mims*, 305 N.C. at 60, 286 S.E.2d at 792 (internal quotation marks and citation omitted). The case *sub judice* is thus unlike *Nelson*, in which reformation was predicated on a mistake of fact, *see Nelson*, 32 N.C. App. 375, 232 S.E.2d 298 (affirming order reforming deed where draftsman failed to include a lot description in the deed that all parties had intended to be included), and more akin to *Mims*, where "[t]he only mistake supported by the evidence [was the] plaintiff's erroneous understanding of North Carolina law governing deeds and perhaps his misunderstanding of the legal effect of having the deed made to both him and his wife as grantees." *Mims*, 305 N.C. at 60, 286 S.E.2d at 792. While the plaintiff in *Mims*, "relying on a real estate agent, was mistaken as to the legal requirements in this state" and the deed's legal effect, "[h]e was not mistaken as to how the deed was drawn"; thus, recovery could not be had on the theory of reformation by mistake. *Mims*, 48 N.C. App. at 218, 268 S.E.2d at 546.

Although Ms. Willis regretted the results of the conveyance after Eddie died, Plaintiff has the burden of proving that the Deed did not represent the original intent of the parties *at the time the deed was signed. See Hice*, 301 N.C. at 651, 273 S.E.2d at 270. As stated *supra*, all of the evidence in this case showed that Ms. Willis understood the conveyance she made in the Deed at the time she deliberately and intentionally signed the instrument. *See Wright v. McMullan*, 249 N.C.

591, 596, 107 S.E.2d 98, 101 (1959) ("[Plaintiff's] mistake as to the legal consequences flowing from his deliberate and intentional act cannot destroy the force and effect of the law."). While we recognize that, in a close case, it is better for the trial court to submit the case to the jury upon a motion for directed verdict, the record does not contain even a scintilla of evidence that a unilateral mistake occurred when Ms. Willis executed the Deed at issue. Therefore, the trial court properly granted Defendants' motion for directed verdict, and we affirm the trial court's order.

Affirmed.

Judge STEELMAN concurs.

Judge CALABRIA dissents.

CALABRIA, Judge, dissenting.

The majority improperly affirms the trial court's order on a directed verdict on the basis of a ground that was not asserted in defendants' motion to the court. Moreover, the majority incorrectly relies upon cases which do not involve the conveyance of gift deeds or the issue of unilateral mistake. Finally, the majority misapplies the standard of review for a directed verdict motion by failing to disregard conflicts in the evidence which were unfavorable to plaintiff. Since I believe Janice Willis ("Ms. Willis") provided more than a scintilla of evidence that her deed to Edward Carroll Willis ("Eddie") was not supported by consideration and that the deed did not express her intent due to her unilateral mistake, I respectfully dissent.

## I.  Standard of Review

This Court reviews a trial court's grant of a motion for directed verdict *de novo*. The Court must determine whether, upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence [is] sufficient to be submitted to the jury.

*Day v. Brant*, ___ N.C. App. ___, ___, 697 S.E.2d 345, 348 (2010) (internal quotations and citations omitted). A motion for directed verdict "should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim." *Norman Owen Trucking v. Morkoski*, 131 N.C. App. 168, 172, 506 S.E.2d 267, 270

(1998). "Where the question of granting a directed verdict is a close one, the better practice is for the trial judge to reserve his decision on the motion and submit the case to the jury." *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923 (1998).

## II. Grounds for Directed Verdict

" '[I]n reviewing the trial court's decision to grant a directed verdict, this Court's scope of review *is limited to those grounds asserted by the moving party at the trial level.*' " *Farndale Co. v. Gibellini*, 176 N.C. App. 60, 67, 628 S.E.2d 15, 19 (2006) (quoting *Freese v. Smith*, 110 N.C. App. 28, 34, 428 S.E.2d 841, 844-45 (1993)) (emphasis added). In the instant case, Ms. Willis sought the reformation of a gift deed on the basis of a unilateral mistake. As the majority correctly notes, this required Ms. Willis to present more than a scintilla of evidence that (1) the deed was not supported by consideration and (2) that the deed failed to express her actual intent in executing the deed due to her unilateral mistake.

However, in their motion for a directed verdict at trial, defendants only challenged the sufficiency of Ms. Willis' evidence on the first issue, consideration. When making her motion for directed verdict, defendants' counsel argued to the trial court, "[t]here was clearly consideration for this deed, and we'd ask you to direct a verdict in our favor." When Ms. Willis' counsel attempted to address the issue of unilateral mistake in his response to defendants' argument, the trial court interrupted him and asked defense counsel if her argument only involved consideration. Defense counsel replied, "[t]hat's correct." Finally, when making its ruling, the trial court stated:

> The Court here finds that there was adequate consideration given by the grantee of the prevailing law of North Carolina, especially the Graham and the Jones case. *Whether or not the draftsmanship was adequate to carry out the wishes of the plaintiff, this Court does not have jurisdiction to pass on, so I'm without power to do so.* That's the order of the Court.

> The directed verdict motion is allowed.

(Emphasis added). It is clear from this ruling that the trial court granted defendants' motion for directed verdict solely on the basis of consideration, as the trial court specifically stated that it did not have the power to rule on the issue of unilateral mistake. Since defendants did not raise the issue of unilateral mistake in their motion for a directed verdict and the trial court did not rule upon that issue, we

are precluded from considering it for the first time on appeal. *Farndale*, 176 N.C. App. at 67, 628 S.E.2d at 19; *see also* N.C.R. App. P. 10(a)(1) (2010). Instead, the majority improperly affirms the trial court's order on this basis.

### III. Unilateral Mistake

Even assuming, *arguendo*, that this Court may properly consider whether Ms. Willis presented sufficient evidence to withstand a motion for a directed verdict on the issue of unilateral mistake, the majority makes several errors in its analysis of this issue.

"The grantor of a conveyance for which no consideration was given by the grantee is entitled to reformation when the deed fails to express the actual intent of the parties due to the grantor's unilateral mistake." *Nelson v. Harris*, 32 N.C. App. 375, 379, 232 S.E.2d 298, 300 (1977) (citing 66 Am. Jur., Reformation of Instruments, § 45 (1973); Annot. 69 A.L.R. 423, 430-431 (1930)). The Restatement (Third) of Property, which governs donative transfers such as gift deeds, describes the doctrine of unilateral mistake as follows:

A donative document, though unambiguous, may be reformed to conform the text to the donor's intention if it is established by clear and convincing evidence (1) that a mistake of fact or law, whether in expression or inducement, affected specific terms of the document; and (2) what the donor's intention was. In determining whether these elements have been established by clear and convincing evidence, *direct evidence of intention contradicting the plain meaning of the text as well as other evidence of intention may be considered.*

2 Restatement (Third) of Property: Wills & Other Donative Transfers § 12.1 (2003) (emphasis added).

In holding that Ms. Willis presented no evidence of unilateral mistake, the majority relies primarily on the fact that Ms. Willis deliberately and intentionally executed the deed, thereby binding her to its legal effects. However, the deed reformation cases cited by the majority did not involve gift deeds or the issue of unilateral mistake and thus, are not applicable to the instant case. In *Rourk v. Brunswick Cty.*, this Court stated that "[w]e have concluded previously the deed was based on consideration and not a deed of gift. Therefore, there is no basis for reformation based on unilateral mistake . . . ." 46 N.C. App. 795, 798, 266 S.E.2d 401, 403 (1980). In *Mims v. Mims*, this Court had to determine only "whether the evidence as forecast by the

papers filed in this case would be sufficient for the jury to find there was a *mutual mistake.*" 48 N.C. App. 216, 218, 268 S.E.2d 544, 545 (1977) (emphasis added), *rev'd on other grounds*, 305 N.C. 41, 286 S.E.2d 779 (1982).

The majority does not cite any cases which involve the reformation of a gift deed on the basis of a unilateral mistake. Such cases should be treated differently than those involving deeds which are supported by consideration, since the grantor of a gift deed receives nothing in return for his or her conveyance. *See, e.g., Tyler v. Larson*, 235 P.2d 39, 41 (Cal. App. 1951) ("[Where] [t]he grantee has given nothing for the conveyance [] he is deprived of nothing; and he cannot complain if the mistake [in a deed] is corrected."); Restatement (Third) of Property: Wills & Other Donative Transfers § 12.1, cmt. b. ("Equity rests the rationale for reformation [of donative transfers] on two related grounds: giving effect to the donor's intention and preventing unjust enrichment. . . . Using the equitable remedy of reformation to correct a mistake is necessary to prevent unjustly enriching the mistaken beneficiary at the expense of the intended beneficiary."). Due to the differences between gift deeds and deeds supported by consideration, the fact that a grantor had the opportunity to read the gift deed before signing should not be determinative:

1. *Donor's signature after having read document does not bar remedy.* Proof that the donor read the document or had the opportunity to read the document before signing it does not preclude an order of reformation or the imposition of a constructive trust. The English Law Reform Committee, in recommending the adoption of a reformation doctrine for wills, stated well the rationale for this position:

We have also considered whether any special significance ought to be given to cases in which the will has been read over to the testator, perhaps with explanation, and expressly approved by him before execution. In our view it should not. Some testators are inattentive, some find it difficult to understand what their solicitors say and do not like to confess it, and some make little or no attempt to understand. As long as they are assured that the words used carry out their instructions, they are content. Others may follow every word with meticulous attention. It is impossible to generalise, and our view is that reading over is one of the many factors to which the court should pay attention, but that it should have no conclusive effect.

Law Reform Committee, Nineteenth Report: Interpretation of Wills, Cmnd. No. 5301, at 12 (1973).

Restatement (Third) of Property: Wills & Other Donative Transfers §12.1, cmt. l.

In the instant case, Ms. Willis presented direct evidence of her unilateral mistake regarding the effect of the executed deed, which the majority ignores. Ms. Willis testified, in relevant part:

Q. You were attempting by this deed to give lifetime rights to Edward, is that right?

[Ms. Willis]. Yes.

. . .

Q. At some point in time, Ms. Willis, you, in fact, learned that this deed did not do what you intended it to do, is that right?

[Ms. Willis]. That's right.

. . .

Q. Can you recall what Anthony told you this deed did . . . ?

[Ms. Willis]. I just thought it was what I intended it to be.

Q. Which is lifetime rights for Eddie?

. . .

[Ms. Willis]. Yes.

. . .

Q. Why did you not read [the deed]?

[Ms. Willis]. Because I had enough faith in [attorney John Way] that he wrote what I said to.

Thus, Ms. Willis gave explicit testimony that she only intended to deed Eddie "lifetime rights," i.e., a life estate, in her property and that the deed did not do what she intended. In addition, several witnesses testified that Ms. Willis was extremely upset and surprised when she learned about the actual legal effect of the deed because it was not what she had intended. While the majority discusses portions of attorney John Way's ("Way") testimony and Ms. Willis' testimony which appears to contradict her direct assertion that the deed did not do what she intended, this testimony is irrelevant. "[O]n a motion for

directed verdict[,] conflicts in the evidence unfavorable to the plaintiff must be disregarded [and] . . . contradictions within a particular witness' testimony are for the jury to resolve." *Springs v. City of Charlotte*, ___ N.C. App. ___, ___, 704 S.E.2d 319, 325 (2011) (internal quotations and citations omitted). Ultimately, I would hold that Ms. Willis presented sufficient evidence to submit to the jury the issue of her unilateral mistake.

## IV. Consideration

As it is necessary for the full and proper disposition of this appeal, I also address plaintiff's argument regarding the issue of consideration. I would hold, and the majority does not conclude to the contrary, that Ms. Willis presented sufficient evidence to submit to the jury the issue of whether Ms. Willis intended the deed to Eddie to be a gift deed.

Plaintiff contends that Ms. Willis presented sufficient evidence at trial that the deed was not supported by consideration to submit the issue to the jury. Plaintiff first notes that the deed did not have any revenue stamps affixed to it. In *Estate of Graham v. Morrison*, the plaintiffs attempted to have deeds to the grantor's niece and grandnephew, which had no revenue stamps attached, voided. 156 N.C. App. 154, 156, 576 S.E.2d 355, 357 (2003). The deeds were challenged because they were conveyed by the grantor's niece as an attorney-in-fact, and she did not have the authority to execute gift deeds in that capacity. *Id.* The trial court entered summary judgment for plaintiffs on the issue, determining that the deeds were gift deeds, because although the deeds stated they were for "valuable consideration," no excise tax appeared on them. *Id.* at 159, 576 S.E.2d at 359. This Court reversed, holding that "[o]mission of excise tax does not *per se* transform a deed given for valuable consideration into a deed of gift. Recitation of valuable consideration within the deed and recording create a rebuttable presumption that the conveyance was valid." *Id.* The *Graham* Court found that genuine issues of material fact existed as to whether the deeds were gift deeds because of (1) the recitation of consideration in the deed; and (2) evidence before the trial court that the deeds could have been supported by consideration in the form of personal services that had been provided to the grantor by his niece and grandnephew. *Id.* at 159-60, 576 S.E.2d at 359.

In the instant case, the deed also recited valuable consideration. Thus, the lack of revenue stamps on the deed was insufficient, standing alone, to meet Ms. Willis' burden of proving that the deed was a

gift deed. Ms. Willis was still required to rebut the presumption of validity that stemmed from the recitation of consideration with more than a scintilla of evidence that the deed was not actually supported by any consideration.

The trial court relied upon our Supreme Court's opinion in *Jones v. Saunders*, 254 N.C. 644, 119 S.E.2d 789 (1961) to hold that Ms. Willis' deed was supported by consideration as a matter of law when it directed a verdict for defendants. In *Jones*, the plaintiff, Myrtle Jones ("Jones"), attempted to have a deed from her father to her sister, Maggie Saunders ("Saunders"), executed in 1947, set aside. 254 N.C. at 645, 119 S.E.2d at 791. The issue before the *Jones* Court was whether Saunders' motion for nonsuit should have been granted on Jones' claim that the deed was procured by fraud or duress. *Id.* at 647, 119 S.E.2d at 792. Saunders argued, *inter alia*, that the motion should have been denied because the deed was only supported by a payment of $500, which should have been considered grossly inadequate consideration. *Id.* at 649, 119 S.E.2d at 793. Our Supreme Court disagreed and held that the motion for nonsuit should have been granted on the basis of evidence presented at trial which showed, *inter alia*, that Saunders lived with her father after his wife died in the late 1930s and that she attended to the duties of their household until her father's death in 1957, ten years after the deed was executed. *Id.* at 647, 119 S.E.2d at 791. In addition, there was also evidence that while living with her father, Saunders procured employment, paid her father's medical bills, and helped with other expenses such as rent and taxes. *Id.*

The *Jones* Court recited the general rule that "[s]ervices performed by one member of the family for another, within the unity of the family, are presumed to have been rendered in obedience to a moral obligation and without expectation of compensation." *Id.* at 649, 119 S.E.2d at 793. However, the Court then noted that "this principle of law *does not prevent a parent from compensating a child for such services*, and does not render consideration for a compensating conveyance inadequate[,]" and ultimately determined that the combination of "[l]ove and affection, recognition of kindness and care, and provision for the future of a child furnish adequate consideration as between parent and child, in the absence of evidence of fraud and duress." *Id.* (emphasis added). The evidence presented at trial established that all of these elements of consideration were present in the conveyance to Saunders from her father, and the Court presumed that they provided consideration for the deed. *Id.* Accordingly, the *Jones* Court held that Saunders' motion for nonsuit should have been granted. *Id.*

A key distinction between *Jones* and the instant case is that in *Jones*, the deed was being challenged by a third party after the grantor was deceased. There is no indication in *Jones* that any direct evidence was presented at trial regarding the grantor's intent or his reasons for conveying his property to his daughter. Instead, the *Jones* Court assumed that the grantor "considered [Saunders'] constancy and devotion a more valuable consideration [than the $500 recited in the deed]." *Id.* at 647, 119 S.E.2d at 792. In contrast, the deed in the instant case was being challenged directly by the grantor, who testified at trial regarding her intentions in executing the deed. As *Jones* itself makes clear, a parent *may* compensate a child for services the child provided, but there is no requirement that the parent do so. *Id.* at 649, 119 S.E.2d at 793.

The evidence at trial, taken in the light most favorable to Ms. Willis, did not establish as a matter of law that Ms. Willis intended to compensate Eddie for any services he provided. "The evidence most relevant in determining donative intent [or the lack of donative intent] is the donor's own testimony." *Burnett v. Burnett*, 122 N.C. App. 712, 715, 471 S.E.2d 649, 651 (1996) (internal quotations and citations omitted). In the instant case, Ms. Willis, upon being asked why she executed a deed to Eddie, testified only that her intention in executing the deed was to ensure that Eddie had a place to live for the rest of his life. Other witnesses, including Way, also testified that Ms. Willis had stated that this was her intent. Ms. Willis' limited intent to provide Eddie with a place to live for the rest of his life did not satisfy all of the elements needed for consideration as stated by the Court in *Jones*. While her intent clearly constituted "provision for the future of a child," it could not, without further testimony regarding her desire to compensate Eddie for his services, be presumed to constitute "recognition of kindness and care."

During her testimony, Ms. Willis never evinced a specific intent to compensate Eddie for any services he provided to her when she was directly asked about her reason for executing the deed. In addition to Ms. Willis' own testimony, Way specifically testified at trial that Ms. Wills did not indicate a desire to compensate Eddie for his services during their discussions about drafting the deed:

Q. Okay. Were you aware of any consideration given for the deed?

. . .

**WILLIS v. WILLIS**

[216 N.C. App. 1 (2011)]

A. I was not told that this deed was for consideration. I was not described any activities on Eddie's part as being defined as— as consideration.

I do know that we talked at great length about Eddie and the things that he had done for his father and her and things like that.

Q. Okay. In your practice don't you find it typical that children often times help their parents though?

A. Without any doubt, yes.

Q. Okay. And usually isn't that seen as a gratuitous situation unless there's some agreement to the contrary?

A. I hate to use the word usual, but nothing else appearing, it's usually—usually not thought of or discussed with me about that being consideration.

Q. Okay. So you didn't know about any type of situation where Eddie had perhaps done anything for [Ms. Willis] and in return [Ms. Willis] was deeding the property to him?

A. That specific point was not discussed with me.

Since Ms. Willis, the grantor, did not explicitly state, in either her testimony or in her conversation with Way, that she was compensating Eddie for his kindness and care by executing the deed, the trial court should not have presumed that Eddie's kindness and care to Ms. Willis provided consideration for the deed. That determination should have been made by the jury.

### V. Conclusion

Defendants' motion for a directed verdict at trial was not based on the ground of unilateral mistake, and thus, the majority improperly affirms the trial court's order on this basis. Contrary to the majority's conclusion, Ms. Willis presented more than a scintilla of evidence that the deed did not express her intent due to her unilateral mistake. Finally, Ms. Willis presented more than a scintilla of evidence to support her claim that the deed to Eddie was not supported by consideration and was thus, a gift deed. Therefore, I would hold that the trial court erred by granting defendants' motion for a directed verdict. I respectfully dissent.