MELINDA LEE MORRIS, FORMALLY MELINDA MORRIS GRAY, PLAINTIFF v.
JERRY WILLIAM GRAY, DEFENDANT

No. COA06-234

(Filed 6 February 2007)

### 1. Appeal and Error— supporting arguments—not required in assignments of error

An appeal was not dismissed where the appellant did not cite authority in his assignments of error, but did so in his brief. Appellate Rule 28(b)(6) does not concern the assignments of error in the record; in fact, argument is specifically precluded from the assignments of error by Appellate Rule 10 (c)(1).

### 2. Courts; Divorce— amended Qualified Domestic Relations Order—no findings indicating reason for changing order of another judge

An amended Qualified Domestic Relations Order concerning a pension was remanded where there were no findings or statements by the trial judge to indicate his reasons for modifying the order. There is thus no evidence of a material change in circumstances that would warrant one trial court modifying, overruling, or changing the order of another.

Appeal by defendant-appellant from order entered 27 October 2005 by Judge Ted S. Royster, Jr. in District Court, Davidson County. Heard in the Court of Appeals 12 December 2006.

*Michelle D. Reingold, for plaintiff-appellee.*

*C.R. "Skip" Long, Jr., for defendant-appellant.*

WYNN, Judge.

Unless a material change of circumstances in the situations of the parties so warrants, one trial judge cannot modify, overrule, or

change the judgment of another, equivalent trial judge.[1] Here, the record shows no findings indicating a material change of circumstances between the parties to necessitate modifying an earlier Qualified Domestic Relations Order (QDRO) entered by another District Court judge. Accordingly, we vacate the amended QDRO and remand for findings to support any necessary modifications to the earlier QDRO.

Defendant Jerry William Gray and Plaintiff Melinda Lee Morris married in 1982 and separated on 12 September 1998. The two subsequently divorced and resolved their claims for equitable distribution by consent in an order pursuant to memorandum of judgment, signed 22 September 2003. That order provided that Ms. Morris would receive "the marital portion of the US Airways, Inc. Defined Benefit Plan (Annuity)," namely "Fifty percent (50%) of the coverture period from December 12, 1982 through September 12, 1998 (per formula established in *Seifert v. Seifert*) with gains and losses thereon." According to the parties' briefs to this Court, Mr. Gray was furloughed from his position with US Airways following the entry of the equitable distribution order but prior to the entry of the QDRO required by the Employment Retirement Security Income Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* (1999).

On 4 April 2005, District Court Judge Lynn Gullett entered a QDRO that assigned 48.9 percent of Mr. Gray's accrued benefit, determined as of 12 September 1998, to Ms. Morris. The QDRO entitled Ms. Morris to have payments "in any form permitted under the terms of the Plan, including a single life annuity" based on her life, "but not including any form of joint and survivor annuity." The QDRO also gave certain death benefits to Ms. Morris: (1) if Mr. Gray died before commencement of benefits to Ms. Morris, she would be deemed the "surviving spouse" for purposes of receiving fifty percent of death benefits payable to a surviving spouse, based on Mr. Gray's accrued benefits as of 12 September 1998; (2) if Mr. Gray died after commencement of benefits to Ms. Morris, she would receive no death benefits and her benefits would cease unless she had elected to receive the single life annuity based on her life; and, (3) the charge of providing death benefit coverage to Ms. Morris would be charged against the portion of Mr. Gray's accrued benefit assigned to Ms. Morris, namely, her 48.9 percent.

---

1. *Madry v. Madry*, 106 N.C. App. 34, 37-38, 415 S.E.2d 74, 77 (1992) (quotations and citations omitted).

Neither party appealed the terms of the 4 April 2005 QDRO entered by Judge Gullett. Mr. Gray later filed for bankruptcy, as did US Airways, Inc., which had its pension plan taken over and administered by the Pension Benefit Guaranty Corporation ("Pension Corporation"). In an order signed 9 September 2005 and entered 17 October 2005, Ms. Gray was given relief from the automatic stay of proceedings against Mr. Morris while he was in bankruptcy, allowing her to proceed with processing the QDRO through the Pension Corporation. After a hearing with no testimonial evidence and no transcript, District Court Judge Ted S. Royster entered a QDRO on 17 October 2005, modifying the terms of the 4 April 2005 QDRO; he then entered an amended version on 27 October 2005, removing provisions for a contingent alternate payee. Differences between the April QDRO and the October Amended QDRO included adding the Pension Corporation as the named trustee of the pension plan, as well as removing the prohibition against Ms. Morris receiving any joint and survivor annuity and changing the way in which either Ms. Morris's or Mr. Gray's death would affect the payment of benefits.

Mr. Gray timely appealed from the 27 October 2005 Amended QDRO, arguing that the trial court erred and abused its discretion by (I) conducting a hearing and entering an order which effectively overruled another District Court judge; (II) conducting a hearing in the absence of any motion being filed by a party; (III) failing to make any findings of fact and/or conclusions of law as to why the previous QDRO should be substantially modified; and, (IV) entering a new QDRO that gave Ms. Morris more than what had been agreed to in the parties' equitable distribution order and provided in an earlier QDRO.

[1] At the outset, we note that Ms. Morris repeatedly refers to North Carolina Rule of Appellate Procedure 28(b)(6) in her brief, arguing that Mr. Gray has abandoned the majority of his arguments by failing to cite to supporting authority in his assignments of error to this Court. However, Ms. Morris misapplies Rule 28(b)(6), which concerns the contents of the appellant's brief to this Court, not the text of the assignments of error provided in the record. In his brief, Mr. Gray has indeed complied with Rule 28(b)(6) by presenting arguments to this Court which "contain citations of the authorities upon which the appellant relies." N.C. R. App. P. 28(b)(6) (2005); *see also Coastal Plains Utils., Inc. v. New Hanover County*, 166 N.C. App. 333, 350, 601 S.E.2d 915, 926 (2004) ("Our appellate rules require that arguments of appellants 'contain citations of the authorities upon which the appellant relies.' ").

Moreover, contrary to Ms. Morris's assertions, an appellant is specifically precluded by Rule 10(c)(1) from including argument in his assignments of error. *See* N.C. R. App. P. 10(c)(1) (2005) ("Each assignment of error shall, so far as practicable, be confined to a single issue of law, and shall state plainly, concisely, and *without argumentation* the legal basis upon which error is assigned.") (emphasis added). Indeed, "[a]n assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references." N.C. R. App. P. 10(c)(1). Accordingly, we decline to dismiss this appeal on technical grounds and instead reach the merits of Mr. Gray's claims.[2]

[2] North Carolina has a well established rule that " 'no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge made in the same action.' " *Madry v. Madry,* 106 N.C. App. 34, 37-38, 415 S.E.2d 74, 77 (1992) (citing *Smithwick v. Crutchfield,* 87 N.C. App. 374, 376, 361 S.E.2d 111, 113 (1987) (quoting *Calloway v. Ford Motor Co.,* 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972))). An exception to this rule allows a subsequent trial judge to rehear an issue and enter a ruling "if there has been a material change in the circumstances of the parties and the initial ruling was one which was addressed to the discretion of the trial judge." *Atkinson v. Atkinson,* 132 N.C. App. 82, 88, 510 S.E.2d 178, 181 (citing *Madry,* 106 N.C. App. at 38, 415 S.E.2d at 77), *rev'd on other grounds,* 350 N.C. 590, 516 S.E.2d 381 (1999); *see also Smith v. Beaufort County Hosp. Ass'n,* 141 N.C. App. 203, 218, 540 S.E.2d 775, 784 (2000) (Wynn, J., dissenting) ("In other words, there must be some basis for changing the [grounds underlying the order in question]; otherwise, I see no basis for one court modifying or overruling another equivalent court."), *aff'd per curiam,* 354 N.C. 212, 552 S.E.2d 139 (2001).

---

2. We note again, however, the difficulty in applying our Supreme Court's ruling in *Viar v. N.C. Department of Transportation* to determine what might constitute "creat[ing] an appeal for an appellant." 359 N.C. 400, 402, 610 S.E.2d 360, 361, *reh'g denied,* 359 N.C. 643, 617 S.E.2d 662 (2005). *See also Bennett v. Bennett,* 180 N.C. App. ——, ——, 638 S.E.2d 243, 245-46 (Hunter, J., dissenting) (arguing that the assignments of error should not have been dismissed because "plaintiff was neither disadvantaged nor was the Court unduly burdened by the imprecise wording of defendant's assignments of error and failure to include the standard of review."); *Broderick v. Broderick,* 175 N.C. App. 501, 504, 623 S.E.2d 806, 808 (2006) (Wynn, J., concurring) ("[T]he cost of effectively denying our citizens *access to justice* in our appellate courts outweighs the benefits of strictly enforcing the technical requirements for assignments of error.").

Here, neither party disputes the fact that the QDRO filed on 17 October 2005 and the amended version filed on 27 October 2005 changed the terms of the QDRO entered by a different trial judge on 4 April 2005. After reviewing the record, we can find no findings or statements by the trial judge that would indicate his reasons for modifying the terms of the earlier order. Both Ms. Morris and Mr. Gray offer possible explanations, including either to ensure that the QDRO accorded with the terms of the pension plan[3] or to change the name of the plan's trustee—but their theories cannot substitute for the reasoning of the trial judge. Moreover, we note that, even if a change was warranted by the new status of the Pension Corporation as the plan's trustee, such an amendment is more appropriately made pursuant to a Rule 59 or 60 motion. *See* N.C. Gen. Stat. § 1A-1, Rules 59, 60 (2005) (allowing for the amendment of judgments due to factors such as errors in law or clerical mistakes).

In general, "[e]quitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion." *Wiencek-Adams v. Adams*, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992) (citation omitted). This Court will find such an abuse of discretion only if "the judgment was unsupported by reason and could not have been a result of competent inquiry." *Id.* Although we cannot say the trial judge did not engage in a competent inquiry in deciding to modify the terms of the earlier QDRO, we likewise cannot say that he did, in light of the absence of any findings or reasons stated in the record. We have no evidence before us of a "material change in circumstances" that would warrant the exception of one trial judge's modifying, overruling, or changing the order of another.

Accordingly, we conclude that the trial judge erred in failing to make adequate findings to justify his modifications to the 4 April 2005. Because this is sufficient grounds to vacate the 27 October 2005 order, we do not address the remainder of Mr. Gray's arguments. We therefore vacate the 27 October 2005 Amended QDRO and re-

3. In support of this contention, Ms. Morris points to a letter from Amy Rondeau, Senior Retirement Specialist with US Airways, that mentions their "conditional approval . . . based upon the understanding that you will make a conforming revision and delete the inapplicable language" of the draft QDRO. However, the letter is not dated and contains no specific reference as to which QDRO needs to be revised. Indeed, the letter appears to be part of Mr. Gray's handwritten submission to the trial judge, objecting to the modified October 2005 QDRO, suggesting to us that Ms. Rondeau's mention of a "conforming revision" refers to the October 2005 version, not the April 2005 version. As presented in the record to us, this partial, undated letter is insufficient and overly vague to prove a "material change in the circumstances."

mand this matter for such findings to be made on the record as necessary to support any modifications of the earlier QDRO required by law.

REMANDED.

Judges HUNTER and STEELMAN concur.