PHILIP SCHMIDT, as ADMINISTRATOR OF THE ESTATE OF
MARTHA JEAN SCHMIDT, PLAINTIFF
v.
SCOTT MILLER PETTY, MD AND NANTAHALA
RADIOLOGY ASSOCIATES, P.A., DEFENDANTS

No. COA13-278

Filed 17 December 2013

**Evidence—medical malpractice—exclusion of evidence—standard of care violation—not proximate cause of death**

The trial court did not abuse its discretion in a medical malpractice action by granting defendants' motion *in limine* to exclude certain expert testimony about a violation of the standard of care. Plaintiff conceded that the violation was not a proximate cause of the decedent's death and confusion of the issues in the minds of the jurors and ensuing prejudice to defendants were likely to occur.

Appeal by plaintiff from judgment entered 22 October 2012 by Judge Sharon T. Barrett in Macon County Superior Court. Heard in the Court of Appeals 29 August 2013.

*Fred D. Smith Jr., P.C., by Fred D. Smith, Jr. and Ron L. Moore, P.A., by Ron L. Moore, for plaintiff-appellant.*

*Northup, McConnell & Sizemore PLLC, by Isaac N. Northup, Jr. and Katherine M. Bulfer, for defendants–appellees.*

DAVIS, Judge.

**SCHMIDT v. PETTY**

[231 N.C. App. 496 (2013)]

Plaintiff Philip Schmidt, administrator of the estate of Martha Jean Schmidt ("Plaintiff"), appeals from a judgment entered by the trial court upon a jury verdict in favor of Scott Miller Petty, M.D. ("Dr. Petty") and Nantahala Radiology Associates, P.A. (collectively "Defendants") in a medical malpractice action. On appeal, he contends the trial court committed reversible error by granting a motion *in limine* filed by Defendants that had the effect of precluding his expert witnesses from offering certain opinion testimony at trial. After careful review, we affirm.

## Factual Background

On 12 May 2006, Plaintiff's decedent, Martha Jean Schmidt ("Mrs. Schmidt"), sought medical care at Smokey Mountain Healthcare Associates ("SMHA") based on symptoms of an upper respiratory infection. During her visit, a two-view x-ray was taken of Mrs. Schmidt's chest. Dr. Petty, a licensed radiologist who reviewed x-rays for SMHA and Angel Medical Center, Inc. ("Angel Medical"), reviewed the x-ray but did not note in his report the presence of a lesion in the upper lobe of Mrs. Schmidt's left lung.

On 27 May 2007, Mrs. Schmidt sought medical care at Angel Medical, complaining of pain in her neck and chest. A chest x-ray was ordered by emergency room physician Dr. James Lapkoff. In his report interpreting the x-ray, Dr. Petty stated that "the lungs are clear and the heart size and pulmonary vasculature are within normal limits. No acute bony abnormalities are identified." Once again, Dr. Petty's report failed to detect the presence of a lesion in Mrs. Schmidt's left lung.

On 27 May 2008, Mrs. Schmidt sought medical care from her primary physician, Dr. Sondra K. Wolf ("Dr. Wolf"), complaining of symptoms associated with pneumonia. Dr. Wolf ordered a chest x-ray, which was performed at Angel Medical. Dr. Petty reviewed the x-ray and reported that "[b]ilateral hyperinflation remains compatible with COPD. There are no new areas of infiltrate or atelectasis. The heart size is stable and there is no evidence for pulmonary edema." Dr. Petty's report again failed to note the presence of the lesion in Mrs. Schmidt's left lung.

Mrs. Schmidt subsequently sought treatment from Dr. Garland C. King ("Dr. King") on 16 June 2008 based on complaints of pleuritic chest pain and abdominal pain. Dr. King ordered a computed tomography ("CT") scan of her abdomen and chest. Dr. Petty reviewed these images and reported that "the findings are indicative of primary lung neoplasm [cancer] until otherwise excluded."

On 21 February 2009, Mrs. Schmidt died of metastatic lung cancer. On 10 February 2011, Plaintiff initiated a medical malpractice action in Macon County Superior Court against Dr. Petty and his practice, Nantahala Radiology Associates, P.A. Plaintiff alleged in his complaint that from May 2006 through May 2008 Mrs. Schmidt's radiographic findings were "reasonably suspicious for cancer . . . and failure to timely diagnose and treat Mrs. Schmidt's lung cancer in May of 2006 and 2007 . . . led to a progression of her lung cancer from treatable, curable stage in May of 2006 and 2007 to an incurable, terminal stage by June of 2008." Plaintiff further alleged that the two-year delay in diagnosis constituted negligence and was a proximate cause of her death.

Plaintiff's expert oncologist, Dr. Gerald Sokol, testified in his deposition that had Mrs. Schmidt's lung cancer been diagnosed in May of 2006 or May of 2007, she would have had an 80% to 85% probability of being cured. He further opined that by May of 2008, however, Mrs. Schmidt's lung cancer was incurable.

Dr. Paul Molina ("Dr. Molina") and Dr. Philip Goodman ("Dr. Goodman") — Defendants' expert witnesses — testified at their depositions that Mrs. Schmidt's 2006 and 2007 chest x-rays did not contain a left upper lobe focal opacity that was suspicious for cancer such that no CT scan was required, and that, therefore, Dr. Petty had not violated the applicable standard of care with respect to his review of these x-rays.

Plaintiff's expert witnesses, Dr. Karsten Konerding ("Dr. Konerding") and Dr. Randall Patten ("Dr. Patten"), testified in their depositions, conversely, that Dr. Petty had in fact violated the standard of care by failing to report the presence of the focal opacity that was present on all three of Mrs. Schmidt's x-rays as a suspicious area that required follow-up study by means of a chest CT scan. Drs. Konerding and Patten also testified that the 27 May 2008 chest x-ray revealed a widened mediastinum that likewise should have been noted by Dr. Petty as indicative of metastatic disease with a recommendation for further study through a chest CT scan. Notably, however, both Dr. Patten and Dr. Konerding admitted that a finding to this effect by Dr. Petty on 27 May 2008 would not have prevented Mrs. Schmidt's death from metastatic lung cancer.

A motion *in limine* was filed by Defendants to exclude evidence regarding Dr. Petty's analysis of Mrs. Schmidt's 27 May 2008 chest x-ray. The motion was orally amended so as to seek the exclusion of "any testimony that Dr. Petty violated the standard of care in reading that x-ray."

The motion was heard before the Honorable Sharon T. Barrett on 8 October 2012. Plaintiff argued that expert testimony that Dr. Petty

**SCHMIDT v. PETTY**

[231 N.C. App. 496 (2013)]

violated the standard of care by failing to note a lesion in his analysis of the 27 May 2008 x-ray was relevant and admissible to "show how the lesion progresse[d]." Plaintiff further contended such opinion testimony was relevant because the "jury could infer . . . that since Dr. Petty did not report the 2.5 or 1.5 centimeter lesions, that he was not looking for cancer in the upper lobe of Mrs. Schmidt's [lung] on the two prior occasions." In response, Defendants asserted that this evidence lacked relevance because of "the fact that any alleged failure by Dr. Petty to report the lesion on the May 2008 x-ray could not have been the proximate cause of the injuries suffered."

Judge Barrett made a relevancy determination based on Rules 404(b) and 406 of the North Carolina Rules of Evidence. She ruled that this evidence was inadmissible under Rule 406 because "there's not a sufficient showing of an adequate number of times that the alleged conduct occurred to establish it as a habit." Judge Barrett further determined that the evidence also lacked relevance under Rule 404(b) because the x-ray was "the final in a series of three x-rays in different years, and . . . the conduct is not conduct that proximately caused the decedent's injury . . . ."

Despite its determination that this opinion testimony was not relevant, the trial court nevertheless proceeded to perform an analysis under Rule 403 of the North Carolina Rules of Evidence, weighing the probative value of this evidence against its prejudicial impact on Defendants and the likelihood of confusion of the issues. Judge Barrett concluded that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice to Defendants and that the admission of this evidence would lead to confusion by the jury. She proceeded to grant the motion *in limine*, ruling that "opinion evidence that the defendant violated the standard of care in May of 2008 . . . shall not be admitted," and "evidence regarding the defendant's failure to note in his report certain findings regarding the decedent's medical condition . . . shall be excluded." Judge Barrett further ruled, however, that the report of the 27 May 2008 x-ray itself was admissible.

The case proceeded to trial on 9 October 2012. At the conclusion of the trial, the jury returned a verdict in favor of Defendants, and the trial court entered a judgment on 17 October 2012. Plaintiff filed a timely notice of appeal to this Court.

## Analysis

The sole issue raised on appeal is whether the trial court erred in granting Defendants' motion *in limine*. "A motion *in limine* seeks

pretrial determination of the admissibility of evidence proposed to be introduced at trial; its determination will not be reversed absent a showing of an abuse of the trial court's discretion." *Warren v. Gen. Motors Corp.*, 142 N.C. App. 316, 319, 542 S.E.2d 317, 319 (2001). An abuse of discretion exists when the record shows that the trial court's ruling was so arbitrary that it " 'could not have been a result of competent inquiry.' " *Morris v. Gray*, 181 N.C.App. 552, 556, 640 S.E.2d 737, 740 (2007)(quoting *Wiencek-Adams v. Adams*, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992)). In our review, "we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008)(citation omitted).

　Plaintiff argues that: (1) the trial court committed error by failing to find the opinion testimony of Plaintiff's expert witnesses regarding Dr. Petty's allegedly negligent interpretation of the 27 May 2008 x-ray relevant under Rule 401 of the North Carolina Rules of Evidence; (2) the trial court abused its discretion by ruling that the probative value of this testimony was substantially outweighed by its prejudicial effect on Defendants and the likelihood of confusion of the issues in the minds of the jurors pursuant to Rule 403; and (3) the error prejudiced Plaintiff because a different result would likely have ensued had the error not occurred.

Even assuming, without deciding, that the excluded evidence could be characterized as relevant under Rule 401, we hold that the trial court did not abuse its discretion in granting Defendant's motion *in limine* based on Rule 403. Rule 403 states, in pertinent part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." N.C. R. Evid. 403. The "application of the Rule 403 balancing test remains entirely within the inherent authority of the trial court." *Warren v. Jackson*, 125 N.C. App. 96, 98, 479 S.E.2d 278, 280, *disc. review denied*, 345 N.C. 760, 485 S.E.2d 310 (1997). Hence, the trial court's determination as a result of this balancing test will not be disturbed on appeal absent a clear showing that the court abused its discretion. *Id.*

Here, the trial court stated the following in connection with its application of Rule 403:

> The next step in the analysis is to consider, even if this could have been admitted as habit or 404(b) evidence, whether under Rule 403, the probative value of this

evidence vis-à-vis the danger of confusion of the issues in the minds of the jury, as this is a medical malpractice case, the factual finding by the jury about the standard of care and about proximate cause are so critical to the determination of liability, that this is a crucial finding by the jury.

If the jury were to hear opinion testimony about the violation of the standard of care that is not alleged as a proximate cause of injury, or if the jury were to hear evidence regarding whether or not the defendant failed to note in his May 2008 report certain findings regarding the decedent's medical condition at that time, I believe and have determined in the exercise of discretion that significant danger of confusion of the jury on a matter that is dispositive of the case would be presented.

Further, the Court finds that the probative value is greatly outweighed by the danger of unfair prejudice to the defendant. And all of this ruling is based on my evaluation of the forecast of the evidence, the pleadings and the contentions of the parties and the authorities submitted at this particular time.

A jury is likely to attach great significance to expert testimony that a party violated the applicable standard of care. *See U.S. v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995)("[E]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the [Rules of Evidence] exercises more control over experts than over lay witnesses." (citations omitted)).

We believe that the trial court acted within its discretion in granting Defendants' motion *in limine*. It was reasonable for Judge Barrett to conclude that had the jury been permitted to hear expert testimony by Drs. Konerding and Patten to the effect that Dr. Petty violated the standard of care in reviewing Mrs. Schmidt's 27 May 2008 x-ray — an error that Plaintiff concedes was not a proximate cause of Mrs. Schmidt's death — confusion of the issues in the minds of the jurors and ensuing prejudice to Defendants were likely to occur. The key issues to be resolved by the jury in this case were whether (1) Dr. Petty violated the applicable standard of care in his reading of the 2006 and 2007 x-rays; and (2) whether these acts of alleged negligence by Dr. Petty proximately caused Mrs. Schmidt's death. We cannot say that the trial court abused

its discretion in determining that the potential for harm stemming from the admission of expert testimony regarding a standard of care violation by Dr. Petty on a separate occasion substantially outweighed any limited probative value of this evidence — given the parties' agreement that any such violation did not proximately cause Mrs. Schmidt's death. *See Horne v. Roadway Package Sys., Inc.*, 129 N.C. App. 242, 244, 497 S.E.2d 436, 438 (1998)("Expert opinion testimony can be excluded when the trial court determines . . . the chance of misleading the jury outweighs the probative value of the evidence."). Thus, the trial court did not abuse its discretion in granting Defendants' motion *in limine*.

### Conclusion

For the reasons stated above, we affirm.

AFFIRMED.

Judges CALABRIA and STROUD concur.