IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-975

Filed: 15 December 2020

Davie County, No. 14 CVS 115

JOSEPH A. MALDJIAN and MARIANA MALDJIAN, Plaintiffs,

v.

CHARLES R. BLOOMQUIST and CAROLINE BLOOMQUIST, Defendants-Appellants/Third-Party Plaintiffs,

v.

PATTI D. DOBBINS, KATHY SMITH, and ALLEN TATE CO., INC., Third-Party Defendants.

Appeal by defendants from judgment entered 6 November 2018 and order entered 14 March 2019 by Judge Tanya T. Wallace in Davie County Superior Court. Heard in the Court of Appeals 29 April 2020.

*Fitzgerald Litigation, by Andrew L. Fitzgerald, and The Bomar Law Firm, PLLC, by J. Chad Bomar, for plaintiffs-appellees.*

*Blanco Tackabery & Matamoros, P.A., by Peter J. Juran and Chad A. Archer, and Nelson Mullins Riley & Scarborough, LLP, by Stuart H. Russell and Lorin J. Lapidus, for defendants-appellants/third-party plaintiffs-appellants.*

*Poyner Spruill LLP, by John Michael (J.M.) Durnovich and Karen H. Chapman, for third-party defendants-appellees Kathy Smith and Allen Tate Co., Inc.*

*Cranfill Sumner & Hartzog LLP, by Richard T. Boyette, for third-party defendant-appellee Patti D. Dobbins.*

ZACHARY, Judge.

On their third appeal to this Court, the parties continue their protracted litigation concerning, *inter alia*, reformation of a deed conveying over 62 acres of real property in Mocksville, North Carolina. The background and procedural facts of this case are provided, in part, in the parties' two related appeals: *Maldjian v. Bloomquist*, 245 N.C. App. 222, 782 S.E.2d 80 (2016), and *Maldjian v. Bloomquist*, 245 N.C. App. 328, 782 S.E.2d 121, 2016 WL 409797 (2016) (unpublished).

On 19 March 2018, this matter came on for trial by jury in Davie County Superior Court. After an eight-day trial, the jury found that Plaintiffs Joseph A. Maldjian and Mariana Maldjian executed a deed for 62.816 acres, more or less, to Defendants Charles R. Bloomquist and Caroline Bloomquist under a mutual mistake of fact. In addition, the jury found against the Bloomquists on the counterclaims they lodged against the Maldjians, as well as the Bloomquists' claims against third-party Defendants Patti D. Dobbins, Kathy Smith, and Allen Tate Co., Inc. ("Allen Tate Co."). The trial court drew the description for a deed of correction, conveying 22.015 acres, more or less, to the Bloomquists, and ordered the Bloomquists to execute the correction deed within 10 days of entry of judgment.

The Bloomquists contend on appeal that the trial court erred (1) by denying certain of the Bloomquists' motions for directed verdict and judgment notwithstanding the verdict; and (2) by excluding certain evidence following pretrial motions *in limine*. After careful review, we affirm.

## Background

The Maldjians owned 62.816 acres on Cana Road in Mocksville, North Carolina ("the Cana Road property"). They were contacted by the Bloomquists' realtor, Kathy Smith of Allen Tate Co., regarding the sale of a portion of the Cana Road property. Because the Bloomquists lived in Pennsylvania, the Maldjians dealt primarily with Kathy Smith and the Bloomquists' daughter and son-in-law, Kate and Sidney Hawes. Mrs. Maldjian testified that she met with the Haweses and discussed "different configurations" of the property for sale, shading various acreages on the Davie County Geographic Information System map. Kathy Smith and LeAnne Brugh, the Maldjians' realtor, were also present. After negotiating a price and agreeing to have the 22 acres surveyed, the parties entered into a contract, which Smith prepared at the Bloomquists' direction. The Maldjians hired a surveyor who prepared a survey of the 22 acres, which was shared with the Bloomquists and Smith, and recorded prior to closing. The Bloomquists retained Patti D. Dobbins to serve as the closing attorney and to prepare the deed. She later agreed to represent the Maldjians as well. On 20 May 2013, the Maldjians executed a deed, recorded at Deed Book 551, Page 69, Davie County Registry, conveying the entire Cana Road property to the Bloomquists. The Bloomquists then leased the Cana Road property to the Haweses.

Approximately ten months after the closing on the Cana Road property deal, the Maldjians filed suit against the Bloomquists and the Haweses, seeking, *inter alia*, reformation of the deed conveying all of the Cana Road property to the Bloomquists.

The Maldjians contended that the deed was incorrect, the result of mutual mistake and a draftsman's error, and did not correctly reflect the intention of the parties. According to the evidence propounded by the Maldjians at trial, the parties negotiated for the sale and purchase of 22 acres. In support of their contention, the Maldjians offered, among other evidence, the parties' correspondence, the survey, and the testimony of various witnesses. Smith, the Bloomquists' realtor, testified that the parties negotiated the sale of 22 acres to the Bloomquists. The closing attorney, Dobbins, testified that the Bloomquists agreed to purchase 22 acres, but that she inadvertently failed to draw a new description from the survey of the 22 acres, and instead inserted the description of the entire 62-acre tract into the deed, which the Maldjians signed and Dobbins recorded. Furthermore, the local Carolina Farm Credit agent testified that Dr. Bloomquist complained to him that he was overcharged on his property tax bill because it included 41 acres that he did not purchase—he only purchased 22 acres, and thus did not owe property taxes on the entire 62-acre tract. Dobbins, the closing attorney, also testified that she and Dr. Bloomquist had several conversations about the incorrect description in the deed, which she offered to correct at no charge. Mrs. Maldjian testified that she and her husband were not alerted to

the problem with the deed until neighbors complained to them nine to ten months later that the Haweses were limiting their access to a portion of the property that the Maldjians did not think that they had sold. This report prompted the Maldjians to review the deed on the website for the Davie County Register of Deeds, at which time they discovered the error. The Maldjians maintained that they then attempted to work with the Bloomquists to resolve this error.

The Bloomquists maintained at trial that they intended to purchase the entire 62-acre Cana Road property from the Maldjians, and that they interpreted the contract's reference to a 22-acre survey to mean that the Maldjians would provide them with a survey of 22 acres for their future use. They did not think that it referred to the number of acres that they were purchasing. Dr. Bloomquist testified that the contract also stated "Lot/Unit 62," which the Bloomquists believed was the number of acres that they were purchasing. According to the Bloomquists, the parties had a meeting of the minds, and the deed conveying the entire Cana Road property to them accurately reflected the intention of the parties.

### *Procedural Posture*

On 11 March 2014, the Maldjians filed a verified complaint against the Bloomquists and the Haweses in Davie County Superior Court, seeking, *inter alia*, reformation of the deed. On 1 May 2014, the Maldjians filed their amended verified

complaint, and on 10 July 2014, the Maldjians filed their second amended verified complaint.

On 22 July 2014, the Bloomquists and the Haweses filed their answer generally denying the Maldjians' claims, asserting various defenses, and moving to dismiss the complaint. The Bloomquists further asserted several counterclaims relating to the condition of the house against the Maldjians: (1) breach of the implied covenant of good faith and fair dealing; (2) negligent misrepresentation; (3) fraud; (4) unfair and deceptive trade practices; and (5) breach of contract. On 21 August 2014, the Maldjians responded to the Bloomquists' counterclaims, generally denying the Bloomquists' allegations and asserting various defenses.

On 22 April 2016, the Bloomquists moved to add Dobbins, Smith, and Allen Tate Co. as third-party defendants. After the trial court granted the motion, the Bloomquists filed their third-party complaint, alleging (1) legal malpractice on the part of Dobbins, (2) negligence on the part of Smith and Allen Tate Co., and (3) breach of contract on the part of Smith and Allen Tate Co.

Dobbins filed an answer and crossclaim on 6 July 2016 against Smith and Allen Tate Co., seeking joint tortfeasor contribution if her alleged negligence was determined to be a proximate cause of any damages sustained by the Bloomquists. In response, Smith and Allen Tate Co. filed their answer and crossclaim, in which they

moved to dismiss the third-party complaint, generally denied the allegations therein, and crossclaimed against Dobbins for indemnity.

On 17 March 2017, both the Bloomquists and the Haweses moved for summary judgment. On 3 April 2017, the trial court granted the Haweses' motion for summary judgment as defendants, but denied the motion with regard to the Bloomquists.

On 19 March 2018, the case came on for jury trial in Davie County Superior Court, the Honorable Tanya T. Wallace presiding. The jury heard evidence on (1) the Maldjians' claim for reformation of the deed; (2) the Maldjians' claim for unjust enrichment; (3) the Bloomquists' counterclaim for breach of contract, with regard to the condition of the house; (4) the Bloomquists' third-party claim for legal malpractice against Dobbins; and (5) the Bloomquists' third-party claims for negligence and breach of contract against Smith and Allen Tate Co.

The Bloomquists moved for directed verdict on the Maldjians' claim for unjust enrichment, which the trial court granted. The trial court denied all other motions for directed verdict, including the Bloomquists' motion for directed verdict on the Maldjians' claim for reformation of the deed. At the close of all evidence, the Bloomquists again moved for directed verdict on the remaining claims, which the trial court denied.

After a short deliberation, the jury found, *inter alia*, that: (1) the Maldjians executed the deed under a mutual mistake of fact; (2) the Maldjians did not breach

their contract with the Bloomquists; (3) the Bloomquists were damaged by the negligence of Dobbins, but that the Bloomquists contributed to their damages by their own negligence or intentional wrongdoing; and (4) the Bloomquists were not damaged by the negligence of Smith and Allen Tate Co. On 6 November 2018, the trial court entered judgment in accordance with the jury's verdicts. The trial court further ordered that the Bloomquists execute the trial court's deed of correction within 10 days of entry of judgment, conveying 22.015 acres, more or less, to the Bloomquists, and with the description drawn in accordance with the survey.

The Bloomquists filed a motion for judgment notwithstanding the verdict, which the trial court denied. The Bloomquists gave timely notice of appeal to this Court.

## *Discussion*

On appeal, the Bloomquists assert numerous arguments that can be segmented into two broad categories: that the trial court erred (1) by denying several of the Bloomquists' motions for directed verdict and their motion for judgment notwithstanding the verdict; and (2) by excluding certain evidence following pretrial motions *in limine*.

### *I. Motions for Directed Verdict and JNOV*

### *A. Reformation Claim*

The Bloomquists first contend that the trial court erred by denying their motion for judgment notwithstanding the verdict ("JNOV") as to the Maldjians' claim for reformation of the deed.

1. *Standard of Review*

As a general matter, "[w]hen considering the denial of a directed verdict or JNOV, the standard of review is the same." *Green v. Freeman*, 367 N.C. 136, 140, 749 S.E.2d 262, 267 (2013). That is, this Court must determine "whether the evidence, taken in the light most favorable to the non-moving party, [wa]s sufficient as a matter of law to be submitted to the jury." *Id.* (citation omitted). The trial court must deny a JNOV motion "if there is more than a scintilla of evidence to support the plaintiff's *prima facie* case." *Tomika Invs., Inc. v. Macedonia True Vine Pent. Holiness Ch. of God*, 136 N.C. App. 493, 499, 524 S.E.2d 591, 595 (2000). "A scintilla of evidence is defined as very slight evidence. The party moving for judgment notwithstanding the verdict, like the party seeking a directed verdict, bears a heavy burden under North Carolina law." *S. Shores Realty Servs., Inc. v. Miller*, 251 N.C. App. 571, 578, 796 S.E.2d 340, 347-48 (citations and internal quotation marks omitted), *disc. review denied*, 369 N.C. 563, 798 S.E.2d 753 (2017). On appeal, whether the movant was entitled to JNOV is a question of law, which this Court reviews de novo. *Green*, 367 N.C. at 141, 749 S.E.2d at 267.

The Bloomquists propound, however, that "the evidentiary standard . . . is greater" upon appellate review of a reformation claim. They assert that "this Court is charged to review the underlying judgment—and the JNOV order—to determine whether the Maldjians produced *clear, strong, and convincing* evidence from which the jury could have reasonably found all essential elements of the Maldjians' reformation claim in their favor," rather than whether the Maldjians produced *more than a scintilla of evidence* to support their claim. (Emphasis added). Indeed, it is easy to conflate the appellate standard of review with the clear and convincing standard of proof applied at trial.

The determination as to "[w]hether the evidence is clear, cogent and convincing is *for the jury*," not the appellate court. *Durham v. Creech*, 32 N.C. App. 55, 59, 231 S.E.2d 163, 166 (1977) (emphasis added). As our Supreme Court stated over a century ago,

> although the evidence must be "clear, cogent and convincing" to entitle a party to correct or reform a written instrument, the [trial] court had no right to withhold the case from the jury. If there was more than a scintilla of evidence, we cannot hold, as a matter of law, that the evidence is not "clear, cogent and convincing," that being for the jury.

*Cuthbertson v. Morgan*, 149 N.C. 72, 76, 62 S.E. 744, 746 (1908).

More recently, then-Judge Beasley made clear in *Willis v. Willis*, 216 N.C. App. 1, 3-4, 714 S.E.2d 857, 859 (2011), *modified and aff'd*, 365 N.C. 454, 722 S.E.2d 505

(2012), that at trial of a deed reformation claim, the plaintiff must establish by clear and convincing evidence that the terms of the written document do not represent the original understanding of the parties. However, the trial court should deny a motion for directed verdict "if more than a scintilla of evidence supports each element of the non-moving party's claim." *Willis*, 216 N.C. App. at 3, 714 S.E.2d at 859 (citation omitted). The standard of review on appeal is "whether the evidence, considered in the light most favorable to the non-moving party, [wa]s sufficient to be submitted to the jury"—i.e., whether there was more than a scintilla of evidence to support each element of the nonmovant's claim. *Id.* (citation omitted).

In sum, the "clear, cogent, and convincing" standard of proof applies at the trial level, and is for the jury to determine. On appeal of the denial of a motion for directed verdict or JNOV, this Court reviews whether there was "more than a scintilla of evidence" to support each element of the reformation claim, therefore justifying submission of the case to the jury.

### 2. *Mutual Mistake*

The Bloomquists first argue that the trial court erred in denying their motion for JNOV because the Maldjians failed to produce clear, cogent, and convincing evidence that they "executed the Original Deed while mistakenly believing that it would transfer only the twenty-two acres identified by the Reformation Survey," and

that the Bloomquists shared the same mistaken belief. (Emphasis omitted). We disagree.

"A written instrument, though it may describe one property, may be reformed to reflect the true intent of the parties where a movant can show (1) the existence of a mutual mistake of fact, and (2) a resultant failure of the document as executed to reflect the parties' intent." *Bank of Am., N.A. v. Schmitt*, 263 N.C. App. 19, 24, 823 S.E.2d 396, 399 (2018) (citation and internal quotation marks omitted), *disc. review denied*, 372 N.C. 96, 824 S.E.2d 424 (2019). "A mutual mistake is one that is shared by both parties to the contract, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." *Wells Fargo Bank, N.A. v. Coleman*, 239 N.C. App. 239, 248-49, 768 S.E.2d 604, 611 (citation and internal quotation marks omitted), *disc. review denied*, 368 N.C. 280, 775 S.E.2d 871 (2015).

"In an action for reformation of a written instrument, the plaintif[f] has the burden of showing that the terms of the instrument do not represent the original understanding of the parties[.]" *Hice v. Hi-Mil, Inc.*, 301 N.C. 647, 651, 273 S.E.2d 268, 270 (1981).

Accordingly, on appeal, this Court must determine whether the Maldjians produced more than a scintilla of evidence that there was a mutual mistake of fact as to the acreage that the Maldjians would convey to the Bloomquists; that is, whether

it was the intent of all parties that the Maldjians convey to the Bloomquists approximately 22 acres of the Cana Road property as described in the survey, rather than the entire Cana Road property. *See id.* at 651, 273 S.E.2d at 270-71.

We are satisfied that the Maldjians produced sufficient evidence that the deed did not reflect the actual agreement and intent of the Maldjians and the Bloomquists because of mutual mistake, the true intent being that the deed convey the 22 acres described in the survey to the Bloomquists. First, there were several witnesses at trial—including Dobbins, the Bloomquists' realtor, and Mrs. Maldjian—who testified that the agreement was for the Bloomquists to purchase 22 acres from the Maldjians.

In addition, the Maldjians produced evidence at trial that Dr. Bloomquist told others that the deed incorrectly conveyed 62 acres to him, rather than 22 acres as intended. The Carolina Farm Credit loan officer, Mark Robertson, testified that Dr. Bloomquist repeatedly called him after he received the property tax bill, stating that the bill was wrong because he had been deeded too much land in the conveyance. Dr. Bloomquist discussed the mistake with Dobbins several times.

There was also substantial evidence of the negotiations for the sale of the property, which indicated that the parties' agreement was for a sale of 22 acres as described in the survey. The emails exchanged between the parties reflect a 22-acre deal. The Bloomquists' realtor, Smith, prepared the Offer to Purchase Contract and included the provision "22 ACRES TO BE SURVEYED," and the Maldjians paid to

have the survey done. Smith testified that she emailed the completed survey of the 22 acres to Mrs. Bloomquist four days prior to closing, and Mrs. Bloomquist admitted reviewing the email with the attached survey.

Moreover, "[e]vidence which tends to show the draftsman's error *also tends to show that the parties were mistaken in their beliefs*. The evidence would support a finding of mutual mistake by the parties." *Durham*, 32 N.C. App. at 60, 231 S.E.2d at 167 (emphasis added). Here, there was clear evidence at trial that the failure to provide a description in the deed for the 22 acres shown in the survey, as intended by the parties, resulted from a mistake of the individual who drafted the deed, Dobbins. Dobbins testified that after Dr. Bloomquist alerted her staff to the error in the deed, Dobbins determined that her employee failed to conduct a "follow-up title check just before closing to make sure nothing ha[d] happened between when you first check and the closing," and thus, the employee did not discover the recorded survey of the 22.015 acres. Dobbins testified that because of this error, she failed to prepare a deed that reflected the true intention of the parties and mistakenly prepared a deed conveying the entire Cana Road property to the Bloomquists.

The Bloomquists' argument that the parties cannot have agreed to the conveyance of the 22 acres that was surveyed because it "cut[s] off acreage required for access to the property that was supposed to be included" is inapposite. Considering the evidence in the light most favorable to the nonmovants, the Maldjians, the

electric-gate mechanism is not needed for access to the property. In addition, the "gate equipment" can be relocated, or replaced for approximately $2,000.

Finally, the Bloomquists insist that "any argument that the parties agreed upon the . . . [s]urvey violates the statute of frauds," because the survey was not attached to the contract or signed by both parties. We reject this argument.

"A contract to convey an interest in land must satisfy the requirements of the statute of frauds. The contract must be in writing and signed by the party to be charged." *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 123, 388 S.E.2d 538, 551 (1990). A contract for the conveyance of land "violates the statute of frauds as a matter of law if it is patently ambiguous, that is, if it leaves the subject of the contract, the land, in a state of absolute uncertainty and refers to nothing extrinsic by which the land might be identified with certainty." *Wolfe v. Villines*, 169 N.C. App. 483, 486, 610 S.E.2d 754, 757 (2005) (citation and internal quotation marks omitted). However, there is no violation of the statute of frauds if the description is latently ambiguous, that is, if the description "is insufficient, by itself, to identify the land, but refers to something external by which identification might be made." *Id.* at 486, 610 S.E.2d at 758 (citation omitted).

A contract to convey land from a larger described tract is saved from patent ambiguity by the parties' agreement to determine the description from a survey to be obtained by the sellers. As our Supreme Court has stated, "[i]t is not a ground for

objection that the survey was prepared subsequently to the execution of the option . . . . [The parties] recognized the necessity for one and obviously contemplated that it would be made sometime in the future." *Kidd v. Early*, 289 N.C. 343, 356, 222 S.E.2d 392, 402 (1976); *see also Wolfe*, 169 N.C. App. at 486-87, 610 S.E.2d at 757-58 (concluding that where the parties agreed that the description would be determined by a survey yet to be obtained, the description was not patently ambiguous, and did not violate the statute of frauds).

Here, "the contract provided an extrinsic means for identification of the precise property to be sold," *Wolfe*, 169 N.C. App. at 487, 610 S.E.2d at 758, namely, the survey requested by the Bloomquists in the contract they submitted to the Maldjians. Thus, "we find the description was latently, rather than patently, ambiguous and therefore did not violate the statute of frauds as a matter of law." *Id.*

In conclusion, there was ample evidence adduced at trial "of a mutual mistake by the parties and their draftsman. The record reflects nothing which bars reformation as a matter of law." *Durham*, 32 N.C. App. at 61, 231 S.E.2d at 167. Accordingly, the trial court did not err in denying the Bloomquists' motion for JNOV on the Maldjians' reformation claim.

## B. Negligence Claims Against the Third-Party Defendants

We next consider whether the trial court erred by denying the Bloomquists' motions for directed verdict and JNOV as to their legal malpractice claim against

Dobbins, as well as their motion for JNOV as to their negligence claim against Smith and Allen Tate Co.

### 1. *Standard of Review*

"In determining the sufficiency of the evidence to justify the submission of an issue of contributory negligence to the jury, the court must consider the evidence in the light most favorable to the defendant and disregard that which is favorable to the plaintiff." *Kummer v. Lowry*, 165 N.C. App. 261, 263, 598 S.E.2d 223, 225, *disc. review denied*, 359 N.C. 189, 605 S.E.2d 153 (2004); *see also Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 479, 562 S.E.2d 887, 896 (2002) ("The existence of contributory negligence is ordinarily a question for the jury . . . ."). To that end, "[i]f there is more than a scintilla of evidence that [the] plaintiff is contributorily negligent, the issue is a matter for the jury, not for the trial court." *Cobo v. Raba*, 347 N.C. 541, 545, 495 S.E.2d 362, 365 (1998).

"A directed verdict is seldom appropriate in a negligence case." *Alva v. Cloninger*, 51 N.C. App. 602, 609, 277 S.E.2d 535, 540 (1981). As a matter of policy, "[g]reater judicial caution is . . . called for in actions alleging negligence as a basis for [the] plaintiff's recovery or, in the alternative, asserting contributory negligence as a bar to that recovery." *Taylor v. Walker*, 320 N.C. 729, 734, 360 S.E.2d 796, 799 (1987).

### 2. *Legal Malpractice Claim*

The Bloomquists contend that Dobbins stipulated that she was negligent, and that as a result of Dobbins' negligence, the Bloomquists were forced to incur legal fees defending the lawsuit instituted by the Maldjians. They further argue that the trial court erred in denying their motions for directed verdict and JNOV because Dobbins "failed to present even a scintilla of evidence as to the Bloomquists' purported contributory negligence or alleged intentional wrongdoing," and that instead, "the entirety of the evidence suggested that the Bloomquists always believed . . . that they got exactly what they were supposed to receive" in the deal. We disagree.

It is well settled that "[c]ontributory negligence is a defense to a claim of professional negligence by attorneys, just as it is to any other negligence action." *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 351, 712 S.E.2d 328, 334, *disc. review denied*, 365 N.C. 357, 718 S.E.2d 391 (2011); *see also Swain v. Preston Falls E., L.L.C.*, 156 N.C. App. 357, 361, 576 S.E.2d 699, 702 (explaining that contributory negligence acts as "a complete bar" to negligence claims), *disc. review denied*, 357 N.C. 255, 583 S.E.2d 290 (2003). "Contributory negligence is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains." *Piraino Bros.*, 211 N.C. App. at 351-52, 712 S.E.2d at 334 (citation and internal quotation marks omitted). "[T]he standard of ordinary care is

an objective one[.]" *Williams v. Odell*, 90 N.C. App. 699, 702, 370 S.E.2d 62, 64, *disc. review denied*, 323 N.C. 370, 373 S.E.2d 557 (1988).

In the instant case, Dobbins stipulated to her negligence in the preparation of the deed, leaving the issue of the Bloomquists' damages for the jury. The Bloomquists maintained that, as a result of Dobbins' negligence, they have incurred hundreds of thousands of dollars in legal expenses defending the Maldjians' suit against them. As Dobbins explains in her brief, the Bloomquists were contributorily negligent, in that they "viewed [her] mistake as an opportunity; a chance to claim ownership of land they did not purchase. That decision resulted in litigation, which caused them to incur attorneys' fees."

Over the course of an eight-day trial, the jury reviewed exhibits and heard testimony from numerous witnesses in support of the Maldjians' claim that the parties intended to convey 22 acres of land, rather than 62 acres. Dobbins testified that she made numerous errors in handling this transaction, including her error in preparation of the deed mistakenly conveying the entire 62 acres of the Cana Road property to the Bloomquists. More importantly, in that it directly relates to the Bloomquists' damages, Dobbins also testified that she offered to correct the error in the deed at no charge.

Taken together, there was more than a scintilla of evidence from which the jury could find that any damage to the Bloomquists was caused, at least in part, by

the Bloomquists' negligence or intentional wrongdoing. Where there was conflicting evidence as to whether the Bloomquists were contributorily negligent or engaged in intentional wrongdoing, then the trial court was required to submit this issue to the jury. *See Cobo*, 347 N.C. at 545, 495 S.E.2d at 365. The trial court, therefore, properly denied the Bloomquists' motions for directed verdict and JNOV as to their legal malpractice claim against Dobbins.

### 3. *Negligence Claim Against Third-Party Realtor Defendants*

The Bloomquists also argue that the trial court erred in denying their motion for JNOV against Smith and Allen Tate Co. The Bloomquists posit that because their damages were "completely uncontested" by Smith and Allen Tate Co. who "stipulated to their negligence," the jury's verdict on this claim was inexplicable and JNOV was appropriate. This argument is without merit.

The verdict sheet to which the parties agreed provided the following question for the jury: "Were the Bloomquists damaged by the negligence of the Third-Party Defendants Kathy Smith and Allen Tate Co., Inc.?" Contrary to the Bloomquists' position, Smith and Allen Tate Co. did not stipulate to negligence by agreeing to the verdict sheet.

Indeed, it was evident at trial that Smith and Allen Tate Co. did not stipulate to negligence, as counsel's discussions regarding the proposed jury instructions clearly demonstrate:

> [Counsel for the Bloomquists]: *As to Kathy Smith, they are denying negligence* so –
>
> THE COURT: That's all one issue. It is negligence and proximate cause, so even though the instructions will be different –
>
> [Counsel for the Bloomquists]: Have you submitted a single issue[?]
>
> THE COURT: We have the attorneys' fees instruction yet with [counsel for Dobbins], but when you are talking about the negligence issue, that's – what are you saying is different?
>
> [Counsel for Smith and Allen Tate Co.]: We need an issue as to whether Kathy was negligent. *We didn't stipulate to negligence.*

(Emphases added).

Moreover, the trial court repeatedly made it clear in the jury instructions, to which the Bloomquists did not object, that Smith and Allen Tate Co. contested the Bloomquists' negligence claim. The trial court instructed the jury that

> [i]n this case the Bloomquists contend, and Kathy Smith and Allen Tate deny, that Kathy Smith and Allen Tate were negligent in one or more ways. The Bloomquists further contend, and Kathy Smith and Allen Tate deny, that the negligence of Kathy Smith and Allen Tate's [sic] was a proximate cause of the Bloomquists' damage.

In short, the premise that Smith and Allen Tate Co. stipulated to their negligence is specious.

Similarly incorrect is the Bloomquists' assertion that evidence of the third-party realtor defendants' negligence, or the Bloomquists' damages, was uncontested because Smith and Allen Tate Co. did not offer any evidence. The Bloomquists bore the burden of proving the negligence, if any, of Smith and Allen Tate Co., as well as their own damages, and it was within the jury's prerogative to reject the Bloomquists' evidence. *See Patterson v. Worley*, 265 N.C. App. 626, 628-29, 828 S.E.2d 744, 747 (2019); *Dobson v. Honeycutt*, 78 N.C. App. 709, 712, 338 S.E.2d 605, 607 (1986). It is beyond cavil that the jury considers all of the evidence properly before it, and the jury is not limited to considering evidence offered by certain parties regarding certain claims, as the Bloomquists suggest. *See Hancock v. Telegraph Company*, 142 N.C. 163, 165, 55 S.E. 82, 83 (1906) ("The jury has the right, and it is [its] duty, to consider all the evidence admitted by the Court."). Simply put, there was abundant evidence offered at trial to support the jury's verdict on this issue.

Finally, as with the Bloomquists' legal malpractice claim against Dobbins, even if the jury found that Smith and Allen Tate Co. were negligent, the evidence at trial nevertheless fails to support a reasonable conclusion that their actions proximately caused any damage to the Bloomquists. There was plentiful evidence at trial that the Bloomquists agreed to purchase 22 acres of the Cana Road property from the Maldjians, that Dobbins failed to properly prepare the deed, and that Dobbins subsequently offered to correct the error in the deed free of charge.

Considered in the light most favorable to Smith and Allen Tate Co., there was more than a scintilla of evidence from which the jury could find that Smith and Allen Tate Co. were not negligent, or that the actions of Smith and Allen Tate Co. were not the proximate cause of any damage to the Bloomquists. The trial court, therefore, properly denied the Bloomquists' motion for JNOV.

## II. *Exclusion of Evidence*

Next, the Bloomquists raise several evidentiary issues. Specifically, they argue that the trial court erred by granting Dobbins' motions *in limine* excluding evidence of (1) Dobbins' offer to pay the Maldjians' legal costs through her liability insurance carrier; (2) the tolling agreement between Dobbins and the Maldjians; and (3) Dobbins' alleged violations of the Rules of Professional Conduct. According to the Bloomquists, the excluded evidence shows Dobbins' bias against the Bloomquists, and would have revealed to the jury that Dobbins had joined a conspiracy with the Maldjians and the Bloomquists' realtor to defeat the Bloomquists' claims. We address each issue in turn.

A. <u>Standard of Review</u>

"When this Court reviews a decision to grant or deny a motion *in limine*, the determination will not be reversed absent a showing that the trial court abused its discretion." *Smith v. Polsky*, 251 N.C. App. 589, 594, 796 S.E.2d 354, 358 (2017). "Abuse of discretion results where the court's ruling is manifestly unsupported by

reason or is so arbitrary that it could not have been the result of a reasoned decision." *Cameron v. Merisel Props., Inc.*, 187 N.C. App. 40, 52, 652 S.E.2d 660, 668-69 (2007) (citation omitted).

An objection to the trial court's ruling on "a motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence." *Xiong v. Marks*, 193 N.C. App. 644, 647, 668 S.E.2d 594, 597 (2008) (citation omitted). Rather, "a party objecting to an order granting . . . a motion *in limine,* in order to preserve the evidentiary issue for appeal, is required to . . . attempt to introduce the evidence at the trial (where the motion was granted)." *Id.* (citation omitted).

### B. *Legal Costs and Liability Insurance*

Before the parties began jury selection, the trial court granted Dobbins' motion *in limine* seeking to exclude any evidence that Dobbins offered to pay the Maldjians' legal costs through coverage provided by her professional malpractice carrier. During trial, the Bloomquists' counsel asked Mrs. Maldjian whether Dobbins told her that she would pay the Maldjian's legal costs, drawing Mrs. Maldjian's unsolicited reference to Dobbins' statement "that she had insurance." Counsel immediately objected and moved to strike Mrs. Maldjian's statement. The trial court sustained the objection, ordered that Mrs. Maldjian's reference to Dobbins' statement "that she had insurance" be stricken, and instructed the jury to disregard the reference to insurance. On appeal, the Bloomquists contend that this evidence should have been

admitted to show that Dobbins "was biased against her clients, the Bloomquists, and favored their adversaries, the Maldjians." We disagree.

Pursuant to Rule 411 of the North Carolina Rules of Evidence, "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully." N.C. Gen. Stat. § 8C-1, Rule 411. However, evidence of liability insurance may be admissible "when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness." *Id.* Nonetheless, "[a] trial court must be diligent about determining if the asserted purpose for offering evidence of insurance is merely pretextual or too attenuated, for then the general rule would be exclusion." *Williams v. Bell*, 167 N.C. App. 674, 684-85 n.2, 606 S.E.2d 436, 443 n.2 (Elmore, J., concurring), *disc. review denied*, 359 N.C. 414, 613 S.E.2d 26 (2005).

To establish that evidence of liability insurance is admissible under Rule 411's collateral purpose exception, the trial court must determine that (1) the evidence is offered for a permissible purpose; (2) the evidence is relevant to establish such purpose; and (3) "the probative value of the relevant evidence [is] substantially outweighed by the factors set forth in Rule 403." *Id.* at 678, 606 S.E.2d at 439 (majority op.); *see also* N.C. Gen. Stat. § 8C-1, Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence."). "The application of the Rule 403 balancing test remains entirely within the inherent authority of the trial court. Hence, the trial court's determination as a result of this balancing test will not be disturbed on appeal absent a clear showing that the court abused its discretion." *Schmidt v. Petty*, 231 N.C. App. 406, 410, 752 S.E.2d 690, 693 (2013) (citations and internal quotation marks omitted).

In the present case, the Bloomquists maintain that Rule 411 does not categorically prohibit the admission of evidence of Dobbins' malpractice liability insurance, in that Dobbins stipulated to her negligence and the evidence was offered for a collateral purpose. Assuming for the sake of argument that this contention is correct, the trial court properly considered the relevancy of this evidence to a showing of Dobbins' bias against the Bloomquists, as well as whether the probative value of the relevant evidence was substantially outweighed by the factors provided in Rule 403.

If this evidence were relevant to the issue of bias—which is far from clear— any probative value is substantially outweighed by the danger of unfair prejudice or confusion. To begin, it is unclear what Dobbins meant by the phrase "legal fees." Dobbins could have meant that she would assume responsibility for the minimal cost of correcting her error in the preparation of the initial deed, rather than that she would fund the Maldjians' litigation. And if Dobbins' offer was to cover the cost of

preparing and recording a new deed to correct her earlier mistake, she made the same offer to Dr. Bloomquist. In addition, it is undisputed that neither Dobbins nor her insurer had, in fact, paid any part of the Maldjians' legal costs or attorneys' fees. Thus, the probative value of this evidence appears slight, while the danger of confusion is more readily apparent.

Moreover, it is unclear that the Bloomquists suffered any prejudice from the trial court's ruling. Although the Bloomquists maintain that the trial court's ruling "deprived [them] of a key means of discrediting the testimony of an important adverse witness," Dobbins, the Bloomquists had no difficulty attacking Dobbins' credibility. By her own admission at trial, Dobbins made numerous mistakes concerning the title search and drafting of the deed, including preparing the deed such that the Maldjians conveyed the entire Cana Road property to the Bloomquists. Dobbins also testified that the deal was for the Maldjians to sell the Bloomquists 22 acres of the Cana Road property, not the entire parcel, and that Dr. Bloomquist admitted that he and Mrs. Bloomquist had mistakenly been deeded too much of the Maldjians' property. In that Dobbins' testimony throughout trial patently "favored [her] adversaries' " claim, the Bloomquists cannot show prejudice from the exclusion of evidence of Dobbins' offer to pay the Maldjians' legal costs through her malpractice insurance.

On these facts, we cannot say that the trial court's ruling was manifestly unsupported by reason. The contention that the jury would have reached a different

result upon learning that Dobbins was insured and that she stated that she would pay for the Maldjians' legal costs rings hollow. *See Latta v. Rainey*, 202 N.C. App. 587, 603, 689 S.E.2d 898, 911 (2010) ("The exclusion of evidence constitutes reversible error only if the appellant shows that a different result would have likely ensued had the error not occurred." (citation omitted)). Therefore, the trial court's exclusion of this evidence was not an abuse of discretion.

### C. *The Tolling Agreement*

Prior to trial, the trial court heard Dobbins' motion *in limine*, seeking to exclude any evidence that she entered into a tolling agreement with the Maldjians as irrelevant and unduly prejudicial. The agreement tolled the statute of limitations on any claims that the Maldjians may have against Dobbins. The Bloomquists argued that evidence of the tolling agreement should be admitted, as it showed Dobbins' bias against them. The trial court granted Dobbins' motion *in limine* with regard to the tolling agreement. At trial, the Bloomquists attempted to introduce this evidence, and the trial court precluded them from offering evidence of the tolling agreement. On appeal, the Bloomquists assert that the trial court erred in this evidentiary ruling, to the Bloomquists' prejudice. We disagree.

By entering into a tolling agreement, a potential "defendant agrees to extend the statutory limitations period on the [potential] plaintiff's claim, usu[ally] so that both parties will have more time to resolve their dispute without litigation." *Tolling*

*Agreement, Black's Law Dictionary* (11th ed. 2019). Here, although Dobbins stipulated to her negligence, she offered to enter into a tolling agreement with both the Maldjians and the Bloomquists so that they could resolve the land dispute prior to seeking damages from her. The Maldjians chose to enter into a tolling agreement with Dobbins, and the Bloomquists chose instead to join Dobbins as a third-party defendant in the lawsuit with the Maldjians.

The Bloomquists first argue that the trial court erred in excluding evidence of the tolling agreement under Rule 408 of the North Carolina Rules of Evidence, which provides, in pertinent part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or evidence of statements made in compromise negotiations is likewise not admissible.

N.C. Gen. Stat. § 8C-1, Rule 408. Indeed, it is evident that this Rule is inapplicable to a tolling agreement, which is not an offer to settle a disputed claim or a settlement agreement. *See id.* However, it is not clear that the trial court excluded the evidence pursuant to this Rule.

Rather, it appears that the trial court excluded evidence of the tolling agreement pursuant to Rule 403, which provides that "[a]lthough relevant, evidence

may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* § 8C-1, Rule 403. "The Rule 403 balancing test falls within the exclusive purview of the trial court, and therefore the court's decisions under Rule 403 will not be disturbed on appeal absent an abuse of discretion." *Williams v. McCoy*, 145 N.C. App. 111, 117, 550 S.E.2d 796, 801 (2001).

The trial court properly determined that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice or confusion of the issues. This evidence lends little to the Bloomquists' argument that Dobbins was biased against them. Dobbins offered to enter into a tolling agreement with the Bloomquists as well as the Maldjians. Moreover, Dobbins' testimony clearly supported the Maldjians' contentions. Finally, Dobbins' credibility was on attack throughout trial, which was centered on her negligence in handling the Maldjians and Bloomquists' real estate transaction. The fact that Dobbins entered into a tolling agreement to permit the Maldjians to sue her at a future date for her admitted malpractice would hardly seem to make Dobbins' testimony less credible, and would only serve to confuse the issues for the jurors.[1]

---

[1] The Bloomquists further assert that the cumulative effect of the trial court's error in excluding evidence of Dobbins' tolling agreement with the Maldjians "[w]hen considered in tandem" with Dobbins' offer to pay the Maldjians' legal costs through her professional malpractice carrier

This evidence had little probative value, and that minimal value was abundantly outweighed by the danger of unfair prejudice or confusion of the issues. Accordingly, the trial court did not abuse its discretion by excluding this testimony.

### D. *Violations of the Rules of Professional Conduct*

The trial court also granted Dobbins' motion *in limine* to exclude evidence that Dobbins violated the North Carolina Rules of Professional Conduct. Although Dobbins stipulated to her negligence, the Bloomquists argued that evidence that her actions violated the Rules of Professional Conduct was necessary to show her bias against the Bloomquists, and to "illustrate[ ] the things that the Bloomquists were denied the ability to know because Dobbins was negligent and acted in derogation of the rules." (Internal quotation marks omitted). On appeal, the Bloomquists assert that the trial court erred in excluding evidence of Dobbins' violations of the Rules of Professional Conduct.

As previously explained, "[a] ruling on a motion *in limine* is merely preliminary and not final." *Xiong*, 193 N.C. App. at 647, 668 S.E.2d at 597 (citation and internal quotation marks omitted). "A trial court's ruling on a motion *in limine* is subject to change during the course of trial, depending upon the actual evidence offered at trial." *Id*. (citation and internal quotation marks omitted). "On appeal the issue is not whether the granting or denying of the motion *in limine* was error, as that issue is

---

warrants a new trial. Given our determination that the trial court did not err by excluding evidence of Dobbins' liability insurance, this argument lacks merit.

not appealable, but instead whether the evidentiary rulings of the trial court, made during the trial, are error." *T&T Development Co. v. Southern Nat. Bank of S.C.*, 125 N.C. App. 600, 602-03, 481 S.E.2d 347, 349, *disc. review denied*, 346 N.C. 185, 486 S.E.2d 219 (1997). Thus, as our Supreme Court has explained, "a motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the movant fails to further object to that evidence at the time it is offered at trial." *Martin v. Benson*, 348 N.C. 684, 685, 500 S.E.2d 664, 665 (1998) (per curiam) (citation omitted).

In order to preserve for appeal an evidentiary issue raised in a motion *in limine*, the party objecting to the trial court's order granting the motion *in limine* must attempt to introduce the evidence at trial. *See Morris v. Bailey*, 86 N.C. App. 378, 383, 358 S.E.2d 120, 123 (1987). If the trial court prevents the party from offering such evidence, the party must then submit an offer of proof, setting forth the substance of the excluded evidence. *See Xiong*, 193 N.C. App. at 648-49, 668 S.E.2d at 597-98 (holding that the plaintiff waived appellate review of a grant of a motion *in limine* when he failed to make an offer of proof of the excluded evidence at trial).

In the case at bar, the trial court granted Dobbins' motion *in limine* with regard to the exclusion of any evidence of her violations of the Rules of Professional Conduct, but permitted the Bloomquists to question Dobbins about the acts at issue without mentioning the Rules. Specifically, after the Bloomquists' counsel conceded that "[i]t

isn't all that important . . . that I use the word 'ethics,' " the trial court ruled that the attorneys were to "keep out any reference to ethics, ethics rules, et cetera. You are free to ask anything – don't touch on that or specific rules since negligence has already been apparently admitted." At trial, the Bloomquists adhered to the trial court's limitations, and cross-examined Dobbins on her actions (which were in violation of the Rules of Professional Conduct) without attempting to introduce evidence that her actions constituted *violations* of the Rules of Professional Conduct.

"Our review of the trial court's decision is precluded by [the Bloomquists] having failed to make an offer of proof and include that evidence in the record on appeal." *Morris*, 86 N.C. App. at 383, 358 S.E.2d at 123. Indeed, at the conclusion of the Bloomquists' cross-examination of Dobbins, their attorney stated, "subject to the discussion in chambers, we will later have an offer of proof"; however, this offer of proof, made the following day, only concerned the tolling agreement. Accordingly, the evidentiary issue raised by the Bloomquists regarding the exclusion of evidence that Dobbins' actions violated the Rules of Professional Conduct is not properly before this Court. But even assuming, *arguendo*, that this issue were properly preserved, this alleged error would not warrant reversal. As previously explained in greater detail, Dobbins stipulated to her negligence, testified to her negligent acts, and was thoroughly examined about submitting affidavits on behalf of the Maldjians. This argument is overruled.

### E. *Cumulative Error*

The Bloomquists further contend that the aforementioned excluded evidence, taken as a whole, amounted to cumulative error because if admitted, this evidence would have permitted the Bloomquists to "demonstrate the scope and extent of the cabal that was conspiring against them." Although all of the excluded evidence pertained to Dobbins, the Bloomquists nevertheless claim that the exclusion of this evidence furthered the other parties' "counterfactual narrative" against the Bloomquists, to their prejudice.

In that we discern no error in the trial court's exclusion of the evidence of which the Bloomquists complain on appeal, the trial court's rulings cannot cumulatively be deemed prejudicial error.

## *Conclusion*

For the foregoing reasons, we affirm (1) the trial court's judgment in accordance with the jury's verdicts, and (2) the trial court's order denying the Bloomquists' motion for judgment notwithstanding the verdict.

AFFIRMED.

Judges COLLINS and HAMPSON concur.